248 P.2d 869

GARZA v. FERNANDEZ.

No. 5554.

Supreme Court of Arizona.

Oct. 9, 1952.

Garland & Sanders, Las Cruces, N. M., for appellant.

Udall & Peterson, Safford, for appellee.

STANFORD, Justice.

Emma Garza, also known as Emma Zorrilla, plaintiff below and hereinafter referred to as plaintiff, brought this action for an accounting against Maria Z. Fernandez, administratrix of the estate of Gerardo Zorrilla, deceased, hereinafter called defendant. Plaintiff now appeals from the lower court's order granting defendant's motion for summary judgment.

Plaintiff, a woman 59 years of age at the commencement of this action, is the mother of four children. Three children were the issue of her first marriage, and one, a daughter, the issue of the second. Plaintiff divorced her second husband in 1935 and in November of 1938, without any marriage ceremony, began living with Gerardo Zorrilla, as his wife. Plaintiff contends that subsequent to their mutual agreement to live together as man and wife they entered into an oral contract whereby plain-

tiff was to manage Zorrilla's business affairs and they were to equally divide the joint accumulation. Zorrilla died intestate in 1949 and plaintiff now brings this action against the administratrix of the estate and for an accounting and a determination of her rights.

The lower court granted defendant's motion for summary judgment based on the following grounds:

"(a) The oral agreement upon which Plaintiff bases her action is barred by Section 58-101, A.C.A.1939, under Sections three and eight thereof;

"(b) Said oral agreement is illegal and void as being against public policy and against good morals; and

"(c) Plaintiff has an adequate remedy at law."

Section 58-101, supra, is Arizona's Statute of Frauds, and subdivisions three and eight thereof read as follows:

"58-101. Statute of frauds.—No action shall be brought in any court in the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the parties to be charged therewith, or by some person by him thereunto lawfully authorized:

\* \* \* \* \* \*

"3. To charge a person upon any agreement made upon consideration of marriage, except a mutual promise to marry;

\* \* \* \* \* \*

"8. Upon an agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will."

We find that on September 25th of 1951, this court allowed and accepted amendments of the assignments of error submitted by the plaintiff, which contained some new matters. Originally but four assignments were submitted, the first being:

"The court erred in entering its order sustaining motion for summary judgment on each and every ground contained therein."

The second assignment is quite similar. The third assignment has reference to vacating that judgment, and the fourth one assigns as error the failing and refusing of the trial court to rule on the tender of income tax returns.

In the brief of plaintiff they did not touch on the third or fourth assignments. In the amended assignments which were filed on September 25, 1951, the plaintiff enlarged to considerable extent on the assignments but in the main the arguments pertain to the asserted oral agreement in question between the deceased and this appellant being illegal and void as being against public policy and good morals.

The court can determine the issues herein by the second assignment of error submitted by plaintiff's amendment, which reads:

"2. The court erred in entering its order sustaining motion for summary judgment on the second ground contained therein which reads as follows:

" '(b) Said oral agreement is illegal and void as being against public policy and good morals,' for the reason that a meretricious relationship does not bar a claim to the property acquired during the period of such relationship, where the claim is based on general principles of law without respect to the marital status; and for the further reason that the contract is fully executed and became so without the aid of the Court and the within action is basically an action for an accounting of and to have the appellant's property set over to her, which is now held by appellee. (* * *)."

It appears from a careful reading of the plaintiff's complaint that, while the statement is made that the parties "began living together and cohabiting together"—the gist of the complaint is that they mutually agreed to jointly work together to acquire property for their joint benefit. Witness the following in each of the three causes of action in the complaint:

"That shortly after plaintiff and said Gerardo Zorrilla began living and cohabiting together, it was mutually understood and agreed between them, that each of them would devote her and his time and efforts to such work and business enterprises as they might jointly decide upon and that they would jointly own all money and property acquired by them by their joint efforts and industry without regard as to which of them and in whose name the property was taken or held."

From the second clause of action we quote:

"That on or about November 9, 1938, she and said Gerardo Zorrilla entered into a joint enterprise whereby they lived and cohabited together as man and wife and lent their mutual efforts toward earning a livelihood and acquiring the hereinafter described real and personal property; and that as a result of their mutual endeavors they acquired the said hereinafter described real and personal property."

From the third cause of action we quote:

"That she hereby adopts by reference and repleads as if set out here in full each and every paragraph contained in her first and second causes of action herein contained."

■ Supporting plaintiff's theory that such an agreement is valid, we quote from 55 C.J.S., Marriage, § 35(c), p. 878:

"However, the fact of a meretricious relationship does not bar claims to the property acquired during the period of such relationship, where the claim is

based on general principles of law without respect to a marital status; the fact that the parties have engaged in an illicit relationship does not bar either party from asserting against the other such property claims as would be otherwise enforceable. Where the facts warrant it, the court may determine the rights of the parties to the property acquired during their relationship as though they were partners or were engaged in a joint enterprise. Thus, where a man and woman cohabit under an agreement to pool their earnings and share in their accumulations, the law will recognize and enforce their agreement. Where property is acquired through the joint contributions or efforts of the parties with the intention that both should share in its benefits, it has been held that, even in the absence of an agreement, the law will apportion their interests in the property in accordance with their respective contributions and efforts."

In the California case of Vallera v. Vallera, 21 Cal.2d 681, 134 P.2d 761, 763, it is stated:

"Plaintiff's lack of good faith in alleging the belief that she had entered into a valid marriage would not, however, preclude her from recovering property to which she would otherwise be entitled. If a man and woman live together as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property."

■ We now call attention to the rule in this jurisdiction as to when a motion for summary judgment should be granted. Our case of Sligh v. Watson, 69 Ariz. 373, 214 P.2d 123, 125, reads in part:

"This being a case where a summary judgment was granted to defendants, our first inquiry should be directed to the basic essential for the granting of a summary judgment. Our court considered this matter in Lewis v. Palmer, 67 Ariz. 189, 193 P.2d 456, 457: 'The law is that the procedure for summary judgment may be availed of to bring an action to prompt conclusion when the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *'

*   *   *   *   *   *

"Rule 56, Section 21–1210, A.C.A. 1939, being the Superior Court Rules of Civil Procedure governing summary judgments, follows the Federal Rules of Civil Procedure, 28 U.S.C.A., insofar as summary judgments are concerned. In Cress v. Switzer, 61 Ariz. 405, 150 P.2d 86, 88, we adopted with approval the Federal Rules Decisions holding in Dairy Engineering Corp. v. De-Raef Corp., D.C., 1 F.R.D. 679:

'An examination of the authorities shows that this principle is not limited to law cases. A summary judgment should never be given until the facts are clear and undisputed. If there is a controversy on a factual question, judgment should be withheld until proof has been made.' There being a genuine controversy before the court on the material question of bona fides of the appellants, we hold that judgment should have been withheld until full proof was made in the premises."

Defendant, in support of her position that the agreement was an illegal one, quotes the following from the deposition of the plaintiff:

"* * * * * *

"Q. You had no intention of trying to get married with him then? A. No sir, not until the time come.

* * * * * *

"Q. You were willing to live with him in consideration that he would take care of you and your daughter? A. He made that agreement that I was his wife.

"Q. He would treat you like a wife if you would come and live with him? A. He made an agreement that I would be his wife.

"Q. Why didn't you get married? A. That time didn't come up yet.

"Q. You say you lived with him ten years or more? A. Yes.

"Q. How much time did you want?

A. Sometimes it takes more than that.

* * * * * *

"Q. What was the agreement you made in El Paso? A. That we would be business partners and man and wife.

* * * * * *

Also, defendant quotes from 12 Am.Jur., Contracts, paragraph 175, page 673:

"From the preceding sections it is apparent that although all agreements against public policy are not necessarily immoral in the narrow sense of that term, yet all immoral agreements may be classed among those that are against public policy. * * *. Thus, it is said that that which is against public morals and public decency should be subject to the condemnation of the courts in all generations, that righteousness is the same today as it was yesterday, and that although refinements of modern· civilization may have increased the forms of bribery and corruption and made them more dangerous and insinuating, they are none the less subject to the reprobation of honest men. The same may perhaps be said of agreements which are immoral because they involve illicit sexual relations. An agreement which has the direct effect of promoting sexual immorality is illegal. * * *"

From Fong v. Miller, 105 Cal.App.2d 411, 233 P.2d 606, 608, defendant quotes:

"* * *. Appellants bitterly complain that the court's action leaves the

respondent unjustly enriched. The complaint is a familiar one and is generally made by those who, deeming themselves wronged by their companions in illegal ventures, find themselves denied any right to enforce their unlawful agreements. Their pleas have always been unavailing. 'This rule is not generally applied to secure justice between parties who have made an illegal contract, but from regard for a higher interest—that of the public, whose welfare demands that certain transactions be discouraged.'"

Having carefully considered the law cited by both parties, and in view of the allegations of plaintiff's complaint, we hold that the law set forth by the plaintiff is the better reasoned and is applicable to the purported facts of this case.

One of the grounds on which the trial court based its granting of the motion for summary judgment was Section 23–105, A.C.A.1939, which reads:

"*Limitations to testimony in actions by or against personal representatives.* —In an action by or against executors, administrators or guardians, in which judgment may be rendered, for or against them as such, neither party shall be allowed to testify against the other as to any transactions with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party or required to testify thereto by the court, and the provisions of this section shall extend to and include all actions by or against the heirs, devisees and legatees or legal representatives of a decedent arising out of any transaction with such decedent."

■■ Our case of Brought v. Howard, 30 Ariz. 522, 249 P. 76, 48 A.L.R. 1347, holds that the evidence of a transaction with decedent is admissible in the trial court's discretion. Also, in Wolff v. First National Bank, 47 Ariz. 97, 53 P.2d 1077, it states that permitting a witness to testify concerning conversations with deceased partner is within the discretion of the trial court, and overruling an objection to competency of a witness is similar or equivalent to requiring that witness to testify. We adhere to these prior rulings and hold that the admission or rejection of such testimony is discretionary with the trial court.

■■ We hold (1) that the statute of frauds was not available as a defense; (2) that there is a genuine controversy in this matter and that judgment should have been withheld by the trial court for the submission of proof. The judgment is reversed and the cause remanded for trial on the merits.

UDALL, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concur.