[Civ. No. 10275. Third Dist. Apr. 20, 1962.]

PRISCILLA WEAK, Plaintiff and Appellant, v. JOSEPH R. WEAK, Defendant and Respondent.

Hoseit & Luther for Plaintiff and Appellant.

Irwin R. Lichten for Defendant and Respondent.

PIERCE, J.—This is a suit in equity brought by plaintiff-appellant, Priscilla Weak, to establish her right to an undivided one-half interest in a parcel of real property, the

deed to which names as grantees "Joseph R. Weak and Priscilla A. Weak, his wife, as joint tenants." Defendant-respondent, Joseph R. Weak, contested the suit upon the ground that, although he had joined in a marriage ceremony with Priscilla, innocently believing her to be marriageable, she already had a husband, a Mr. Castle, still living, and that the dissolution of the prior marriage, as she then knew, had been only in the interlocutory stage when the Weak nuptials took place. Joseph alleged that he would not have "permitted" Priscilla's name on the deed but for his belief that she was his lawfully wedded wife; and he cross-complained to establish sole ownership. Priscilla contended she innocently, but mistakenly, believed when she married Joseph that Castle had obtained an annulment, not a divorce, and that she was therefore free to marry Joseph. She also contended that this purchase of property, which took place four months after the invalid marriage and three years after the parties had commenced cohabitation, was a joint venture and therefore it was not a question of Joseph "permitting" her name to be included on the deed, but on the contrary such inclusion was a matter of her right. The trial court, making no specific finding on the latter contention, found against Priscilla's claim that she believed she was free to wed Joseph and further found that her marrying him constituted a continuing implied representation she could legally do so. Judgment was for Joseph on his cross-complaint.

One assignment of error is the admission in evidence over plaintiff's objection of the file in another action in the Superior Court of Sacramento County, brought by Joseph for a divorce from Priscilla or, in the alternative, for an annulment. In said action Priscilla moved for temporary alimony, for her attorney's fee and for costs. This file was introduced by defendant solely to prove "an estoppel by judgment" in that the trial court there in ruling upon the motion caused a minute order to issue which stated in part "that . . . defendant . . . was guilty of fraud and wrongdoing in inducing and entering into the marriage and was aware of the then existence of her said prior marriage."

We have concluded that it was error to admit this minute order in evidence as proof of the issue of fraud on the part of Priscilla in the instant case. This interlocutory order was not res judicata and could not constitute an estoppel by judgment: First, because the issues were not the same (see 3 Witkin's California Procedure, § 62, p. 1947, and cases cited), and, second, because it was an interlocutory order

(*idem* § 49, p. 1934). The issues are not the same because, even if the marriage were fraudulently induced it does not necessarily follow that interest in real property acquired by subsequent purchase was so induced—as will appear most clearly from the discussion of facts hereinafter stated in this opinion. Moreover, the relief sought in the two actions was not the same. (*Langley* v. *Schumacker*, 46 Cal.2d 601, 602-603 [297 P.2d 977].) Therefore the finding of fraud in the other case could not be determinative of the issue here, even were the earlier order a final one.

But it was not final. A motion for alimony or for attorney's fees and costs could have been renewed at any time during the pendency of the other action and the position of the court could have been modified or reversed. (*Miller* v. *Miller*, 57 Cal.App.2d 354, 360-361 [134 P.2d 292].) Or counsel, realizing the difficulty always inherent in the summary presentation of evidence within the limits of time possible in hearings on motions, might prefer to bide his time until the trial.

In the case reported in American Law Reports, preliminary to a comprehensive note on the subject (*Bannon* v. *Bannon*, 270 N. Y. 484 [1 N.E.2d 975, 105 A.L.R. 1401, 1404]), it was held by the New York Court of Appeals (Lehman, J.) :

"This court has said that it is 'only a final judgment upon the merits, which prevents further contest upon the same issue, *and becomes evidence* in another action between the same parties or their privies. Until final judgment is reached the proceedings are subject to change and modification; are imperfect, and inchoate, and can avail nothing as a bar, *or as evidence,* until the judgment, with its verity as a record, settles finally and conclusively the questions at issue. An interlocutory order is not such a judgment. It is not a judgment at all.' " (Emphasis added.)

 Even a final judgment between the same parties (but not involving the same issues) not only does not create an estoppel; it is not admissible in evidence—by the numerical weight of authority, at least. (See cases collected in 4 Wigmore on Evidence (2d ed.) § 1346a, p. 671, note 1.) Although criticizing the reasons sometimes expressed for the rule, Dean Wigmore states (in 5 Wigmore on Evidence (3d ed.) § 1671a, p. 687) :

"The doctrine might be defended on three grounds: in the first place, the official finding was not based on personal observation . . .; in the next place, the use of a judgment in

another cause might induce a superficial or scant proffering of evidence in the present cause; and thirdly, the usual judgment in civil cases involves more than one detailed separable cause, and therefore might not be clearly applicable to the issue in the present case.''

The same author, although finding them unconvincing, states other reasons expressed by Professor Edward W. Hinton, *Judgment of Conviction—Effect in a Civil Case* in 27 Illinois Law Review, page 195, in which the latter urges (1) that such evidence is hearsay which does not fall within a recognized exception; (2) that it calls for opinion evidence; (3) that it puts the trier of fact in the second case in the position where he must either blindly accept the conclusion of the first fact-trier or disregard it entirely since he does not have before him the evidence which was before the court in the first case, and which would permit a weighing of the opinion. (5 Wigmore on Evidence, § 1671a, p. 688.)

Whatever may be the merits and demerits in the exclusion from evidence of *final* judgments, we do not hesitate to establish the rule (since this seems to be a case of first impression in California[1]) that an *interlocutory* order is inadmissible in evidence to prove the truth of opinions expressed therein—for the reasons above stated.

Ordinarily error in the admission of an item of this nature in evidence, particularly in a trial without a jury, would not be deemed prejudicial under article VI, section $4\frac{1}{2}$ of the Constitution of California. Here, however, in a memorandum opinion the court indicated it had given the opinion expressed in the minute order considerable weight, and states that it ''alone was sufficient to establish this fraud'' (although adding there was other evidence amply confirming this). Moreover, he seems to have been preoccupied with the plaintiff's implied misrepresentation, as though it were the only issue in the case, although there was substantial evidence to support plaintiff's contention that acquisition of this property was under a joint venture to which she contributed a full share, and therefore inclusion of her name on the deed was a matter of right and not of defendant's largess. The record shows the following:

Plaintiff, a woman of several marriages and at least one

---

[1]In *Williamson* v. *Williamson,* 41 Cal.App. 721 [183 P. 301], there is a statement without cited authority and as obiter dicta (at p. 727): ''As it [the judgment] had not become final, it was properly excluded as incompetent evidence.''

previous extramarital venture, took up house trailer keeping and cohabitation with defendant in March of 1950. The couple continued this arrangement for eight months, during which period, according to plaintiff, plans evolved between them to become freeholders. Plaintiff testified: ''I guess we talked about it a long time, you know, just before November, but we decided to buy property that wasn't built up and build it up together and make a profit. . . . We lived in the trailer until we had enough to buy some property.'' The record conflicts as to who suggested the marriage, but a Nevada license was obtained and the ceremony performed in November, 1951.

At the time they were married Priscilla's next preceding husband, Castle, had obtained an interlocutory decree of divorce from her. This had been entered on February 9, 1951, so that when Priscilla married Joseph she lacked three months of being free to marry. (The final decree was actually entered February 13, 1952.) Priscilla had been served with summons in this action in January, 1951. She testified she had been told by Castle, and believed, that the action was for an annulment, since Castle and she had lived together only a few months.

Joseph testified Priscilla had told him of two previous marriages but not of her marriage to Castle. Priscilla denied this; said that Joseph and Castle had met on an occasion at the home of a Mrs. Cuthbert when they ''kidded'' about ''when I lived with Mr. Castle at the hotel'' and that Joseph knew she and Castle were then married.

There is no evidence that Joseph had property of any considerable value when he and Priscilla were married. Therefore, Priscilla does not appear to be in character as a scheming woman luring a man into a marriage to share his wealth— and the trial court does not so find. Had she had such a design, patience for three months would have removed all obstacles imposed by law.

Four months after the marriage, the couple started to acquire the property in question. The very brief record in this case is silent as to the source of the funds for the down payment—if any was made. The couple first lived in a garage located on the front of the lot. Monthly payments were made from Joseph's earnings and a house was built on the back portion by his labors. But plaintiff was not idle. Besides keeping house, planting and tending the lawn and garden, she also took care of and nursed defendant's mother. Priscilla testified: ''His mother was senile and they wouldn't keep her

in the institution and he brought her up. The way our house is situated we had to rent another house, had to have bars and heavy screens and you could not leave her.'' This continued for a year and a half, until the mother died. Defendant admitted this arrangement.

In 1955 the back property was sold under contract and from then on payments under this contract paid off the balance on the original contract.

■ The fact that a deed is taken in joint tenancy establishes a prima facie case that the property is actually *owned* in joint tenancy. ■ There is a presumption that ownership is as stated in the deed and the burden is upon the party who seeks to rebut the presumption. (*Guerin* v. *Guerin*, 152 Cal.App.2d 696 [313 P.2d 902], at pp. 709, 710; *Schindler* v. *Schindler*, 126 Cal.App.2d 597 [272 P.2d 566], pp. 601, 602.) Defendant testified he would not have had plaintiff's name put on the deed as a joint tenant had he realized their marriage was illegal. But he did not expressly deny the agreement with Priscilla and it is significant that his verified amended complaint for an annulment filed in the other action *after* he learned of Priscilla's undissolved marriage to Castle still alleges the property here at issue to be community property.

The unblessed liaison between the parties lasted for nine years. Then, according to plaintiff, defendant grew tired of the arrangement. Plaintiff offered proof that a new heart interest moved defendant to reject her. The trial court sustained defendant's objection to this proof. We think the evidence was relevant as tending to prove that defendant's scruples against sharing bed, board and real estate purchases with a woman with whom he was not joined in lawful wedlock were less compelling than his wish to be free to graze, unfettered by any coownership problems, in the greener pastures.

■ A woman living with a man as his wife but with no genuine belief that she is legally married to him acquires by reason of cohabitation alone no rights of a cotenant in his earnings and accumulations during the period of their relationship. (*Vallera* v. *Vallera*, 21 Cal.2d 681 [134 P.2d 761], at p. 684, citing *Flanagan* v. *Capital Nat. Bank*, 213 Cal. 664 [3 P.2d 307].) But the *Vallera* case, *supra*, also holds (on p. 685):

"Plaintiff's lack of good faith in alleging the belief that she had entered into a valid marriage would not, however, preclude her from recovering property to which she would otherwise be entitled. ■ *If a man and woman live together*

*as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property.* [Citing cases.]" (Emphasis added.)

This rule is well settled. (See cases collected in a note in 31 A.L.R.2d 1255.) In the *Vallera* case, under the facts found to exist, a majority of the Supreme Court in a four to three decision held that there was "no evidence that the parties in the present case made any agreement concerning their property or property rights." The minority opinion filed by Curtis, J. (concurred in by Carter, J., and Peters, J. pro tem.) would have held that the trial court's judgment for the plaintiff there implied an agreement to share accumulations, the wife's contention being the value of her services as housekeeper, cook and homemaker.

A retrial of this case may or may not establish the conjectural validity of appellant's contention that there was a joint venture. Substantial evidence supported the contention. No specific finding was made on this issue by an experienced judge usually meticulous in this regard.

Although there was no request for a special finding, the circumstance of the omission, added to error in the admission and weighing of another's interlocutory judicial opinion added also to an emphasis on the plaintiff's wrongdoing as conclusive of all issues, leaves us to speculate whether the trial court did not conclude that the law penalizes a woman for contracting a bigamous marriage by depriving her of property jointly acquired with her companion. It does not do so. So speculating we cannnot conclude plaintiff has not been prejudiced.

The judgment is reversed and the cause remanded for retrial.

Peek, P. J., and Schottky, J., concurred.