691 P.2d 664

**Rose Marie COOK, aka Elsten, Plaintiff/Appellant,**

**v.**

**Donald COOK, Defendant/Appellee.**

**No. 17520–PR.**

Supreme Court of Arizona, En Banc.

Oct. 31, 1984.

Rehearing Denied Dec. 11, 1984.

Croswell & Cornelio by Carmine Cornelio, Tucson, for plaintiff/appellant.

Messing & Glicksman by Elliot Glicksman, Tucson, for defendant/appellee.

FELDMAN, Justice.

Rose Marie Cook, aka Elsten, petitioned this court for review of a decision of the court of appeals affirming the trial court's judgment against her and in favor of the defendant, Donald Cook. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ.App.P. 23, 17A A.R.S. We granted review on the issues pertaining to the enforceability of agreements made by non-marital cohabitants. A detailed version of the facts is set forth in *Cook v. Cook*, 143 Ariz. 1, 691 P.2d 713 (App. 1984). We provide a brief summary.

## FACTS

Intending to marry as soon as Donald's divorce became final, Rose and Donald moved to Tucson in 1969 and lived there together until 1981. Although they did not marry, Rose used Donald's last name and they represented themselves to the community as husband and wife. Both parties worked throughout most of the relationship, pooling their income in two joint accounts and acquiring a house, two cars and a number of shares of stock, all owned as joint tenants with right of survivorship. Rose left Donald in 1981. Of their joint assets, she received only one car and a few hundred dollars; Donald retained the balance.

Rose brought an action against Donald in November, 1981 on a theory of implied partnership, seeking an accounting and alleging that Donald had breached the partnership agreement by retaining more than one-half of the assets. The trial court first granted relief to Rose on the theory that the parties "had implicitly a partnership," then vacated its original order and entered judgment for Donald because it was "persuaded that it was in error and exceeded its authority" in its original order granting relief to Rose. Rose appealed, and Division Two affirmed the amended judgment, which had granted no relief to Rose.

The substantive issues which we first address are: 1) What was the nature of the alleged agreement between Rose and Donald? 2) Is such an agreement enforceable even though Rose and Donald were cohabiting at the time it was made and performed? 3) Is such an agreement rendered unenforceable if made in contemplation of an eventual marriage which did not occur?

In resolving these issues we assume, but are by no means certain (*see post* at 671–672), that the trial court found that there was an agreement. The court of appeals concluded there was such an agreement, but held it unenforceable (143 Ariz. at 3, 691 P.2d at 715).

## THE NATURE OF THE AGREEMENT

Rose stated in her deposition that she and Donald had an agreement:

> When we moved up here, we moved up here together as husband and wife. And everything we did and purchased, whether it be a vacuum cleaner or a car, was together as husband and wife. It was just something *that we agreed on*, that is how we were going to do it, it was both of us.

Deposition of Rose Marie Elsten, 2/12/82, at 16 (emphasis supplied). Only fragments of Rose's deposition were offered in evidence at trial, and it is impossible to determine from the trial transcript precisely what those portions were. Nevertheless, the court of appeals described the evidence as follows:

> [T]he circumstances of this case present a man and a woman cohabitating [sic] with an agreement to pool their earnings and share equally in their joint accumulations.

(143 Ariz. at 3, 691 P.2d at 715.) In addition, the court of appeals determined that both parties had "admitted an intention to share equally in the various joint assets" (Id. at 1, 691 P.2d at 713) and that the trial court in its original order "divided the assets in accordance with the way the parties intend-

ed to hold them." (Id. at 3, 691 P.2d at 715.) The conduct of the parties certainly demonstrates such an agreement and intent. Rose and Donald maintained two joint accounts, a checking account and a credit union savings account, in the names of "Rose and Don Cook" and held by them as joint tenants with right of survivorship. Neither Rose nor Donald maintained a separate account. Both deposited portions of their paychecks into the accounts and used the funds in the accounts to pay for household expenses and various assets they purchased. In addition, Rose and Donald held jointly a number of shares of Southwest Gas stock purchased with funds from the credit union account. In 1972 they purchased a house, taking the deed as husband and wife in joint tenancy with right of survivorship. Both signed the mortgage, incurring liability for the full purchase price of the house, and payments on the mortgage were made out of the joint checking account.

■ This evidence of Rose and Donald's express agreement, intention and subsequent course of conduct strongly supports a finding that they did contract to pool their earnings and share equally in certain assets. The *sine qua non* of any contract is the exchange of promises. Restatement (Second) of Contracts § 1 (1981). From this exchange flows the obligation of one party to another. 1 Williston on Contracts § 1 at 2 (1957). Although it is most apparent that two parties have exchanged promises when their words express a spoken or written statement of promissory intention, mutual promises need not be express in order to create an enforceable contract. Restatement (Second) of Contracts § 4. Indeed, a promise "may be inferred wholly or partly from conduct," *id.*, and "there is no distinction in the effect of the promise whether it is expressed in writing, or orally, or in acts, or partly in one of these ways and partly in others." *Id.* § 19, comment *a*. *See also Arizona Board of Regents v. Arizona York Refrigeration Co.*, 115 Ariz. 338, 341, 565 P.2d 518, 521 (1977). Thus, two parties may by their course of conduct express their agree-

ment, though no words are ever spoken. From their conduct alone the finder of fact can determine the existence of an agreement. Restatement (Second) of Contracts § 4; 1 A. Corbin, Contracts § 9 at 20–21 (1963). *See also Malcoff v. Coyier*, 14 Ariz.App. 524, 484 P.2d 1053 (1971).

■ Although isolated acts of joint participation such as cohabitation or the opening of a joint account may not suffice to create a contract, the fact finder may infer an exchange of promises, and the existence of the contract, from the entire course of conduct between the parties. Here, there is ample evidence to support a finding that Rose and Donald agreed to pool their resources and share equally in certain accumulations; their course of conduct may be seen as consistently demonstrating the existence of such an agreement. Thus, the trial court would not need to find an agreement by relying on the testimony of one party to the exclusion of the other, as some courts have done. *See Bridges v. Bridges*, 125 Cal.App.2d 359, 270 P.2d 69 (1954); *Garcia v. Venegas*, 106 Cal.App.2d 364, 235 P.2d 89 (1951); *Kinkenon v. Hue*, 207 Neb. 698, 301 N.W.2d 77 (1981). Neither need the court look solely to the title in which joint property is held to determine ownership. *See Weak v. Weak*, 202 Cal.App.2d 632, 21 Cal.Rptr. 9 (1962); *In re Estate of Thornton*, 81 Wash.2d 72, 499 P.2d 864 (1972).

■ The legal effect of Rose and Donald's actions and expressions may have been the formation of a partnership in contemplation of marriage, or it may have been the creation of a contract as to joint ownership of assets in expectation of a continuing cooperative effort, irrespective of marriage. The label we attach is unimportant. *See* Bruch, *Property Rights of De Facto Spouses Including Thoughts on the Value of Homemakers' Services*, 10 Family L.Q. 101, 116 (1976); Annot., *Property Rights Arising from Relationship of Couple Cohabiting Without Marriage*, 3 A.L.R.4th 13 (1981). *Compare Lee v. Slovak*, 81 App.Div.2d 98, 440 N.Y.S.2d 358

(1981) *with Knauer v. Knauer*, 323 Pa. Super. 206, 470 A.2d 553 (1983). Whatever the label, an agreement fairly and freely made and embodying the intent of the parties is enforceable; a court will not set it aside unless it is contrary to public policy, *Galbraith v. Johnston*, 92 Ariz. 77, 373 P.2d 587 (1962), or not supported by proper consideration, *Malcoff v. Coyier, supra.*

## THE MERETRICIOUS RELATIONSHIP

■ We turn to a consideration of whether enforcement of the alleged agreement would contravene the public policy of Arizona. Protection of the marital relationship is the public policy of this state. *Maricopa County v. Douglas*, 69 Ariz. 35, 43, 208 P.2d 646, 651 (1949). That policy is furthered by the state's community property laws, A.R.S. §§ 25–211 to 217, which are "deeply rooted in the policy of this state." *In re Baldwin's Estate*, 50 Ariz. 265, 275, 71 P.2d 791, 795 (1937). The law will not give to non-marital cohabiting parties the benefit of community property rights, since these rights derive solely from the marital relationship. A.R.S. § 25–211; *Porter v. Porter*, 67 Ariz. 273, 195 P.2d 132 (1948).

■ Thus, plaintiff could not obtain from this court the benefits which the law grants to those in the status of husband and wife. Those rights are conferred without need of a contract, and those who wish to obtain those benefits can do so only by becoming husband and wife. But what if plaintiff seeks only to enforce an agreement for the pooling of income and the ownership of the property acquired with that income? The court of appeals held that Rose could not prevail because

> Arizona is not a jurisdiction which will permit division of property acquired during a non-marital cohabitation arrangement in accordance with the intent of the parties.

(143 Ariz. at 3, 691 P.2d at 715). We granted review because we disagree with this statement. *See* Ariz.R.Civ.App.P. 23(c), 17A A.R.S. In *Fernandez v. Garza*, 88 Ariz. 214, 354 P.2d 260 (1960), this court stated:

> [I]t is the established law of the case that the fact that the parties engaged in a meretricious relationship does not bar either from asserting against the other such claims as would be otherwise enforceable.

*Id.* at 219, 354 P.2d at 263. The agreement which the court of appeals described (143 Ariz. at 3, 691 P.2d at 715)—to "pool their earnings and share equally in their joint accumulations"—would be perfectly enforceable if made between parent and child, brother and sister, friend and friend or any other parties in a cohabitant relationship. *Beal v. Beal*, 282 Or. 115, 126, 577 P.2d 507, 512 (Linde, J., concurring in part and dissenting in part). The agreement would be enforceable if the parties had not lived together at all. *Id.*

■ Whether the parties "became lovers" before or after entering into an agreement is not the relevant inquiry. The relevant question is whether the agreement was made for proper consideration. *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 823–24, 557 P.2d 106, 114–15 (1976); Folberg & Buren, *Domestic Partnership: A Proposal for Dividing the Property of Unmarried Families*, 12 Willamette L.J. 453, 465 (1976). This court long ago alluded to the rule which we think is proper:

> There is much authority for allowing recovery where both parties know of the illegality of their activities, but where there exists an *independent agreement* that the property acquired during the period of their unlawful practices shall be owned in a certain manner. If the unlawful practices are merely incidental or separate from their contract concerning the ownership of property, the courts will *give effect to the agreement and grant relief.*

*Stevens v. Anderson*, 75 Ariz. 331, 335, 256 P.2d 712, 714–15 (1953) (emphasis supplied). This rule is in accord with recognized authority. *See* 6A A. Corbin, *Contracts* § 1476 at 622.

■ The question, then, is whether there was an "independent agreement." The

court of appeals rejected "the notion that the agreement stood independently of the cohabitation arrangement." (143 Ariz. at 3, 691 P.2d at 715.) We agree that the facts indicate that any agreement here was made in view of the cohabitation arrangement and in that sense was not "independent" of that arrangement. Most agreements of this type are made as an adjunct to or part of the cohabitation arrangement. We do not believe, however, that enforceability depends upon whether the agreement is independent of the living arrangement, but whether the agreement can stand independently as a valid contract. In our view, this depends upon whether the agreement is supported by consideration and whether that consideration is independent of the meretricious relationship. If the agreement is independent, in the sense that it is made for a proper consideration, it is enforceable even though the parties are in a meretricious relationship. That relationship will not prevent enforcement of the agreement unless the relationship is the consideration for the agreement. *Cross v. Cross*, 94 Ariz. at 32, 381 P.2d at 575; *Stevens v. Anderson, supra; Garza v. Fernandez*, 74 Ariz. 312, 248 P.2d 869 (1952).

 The record here would support a finding that the consideration was not against public policy. As the court of appeals indicates, the alleged agreement seems to be one to pool income, acquire assets and share in the accumulations. There is no finding to indicate that the agreement to provide sexual or cohabitant services was part of the consideration for the agreement, though certainly the contemplation of cohabitation and marriage may have been part or all of the reason for making the agreement.[1] Again, however, the question is not *why* the agreement was made, but *whether* it was made and whether it was made for proper consideration. We therefore disapprove of the court of appeals' holding (143 Ariz. at 3, 691 P.2d

at 715) that the judgment below may be affirmed because the agreement did not stand "independently of the cohabitation arrangement." Even though "the commingling of funds and the concurrent agreement to share them equally would never have existed but for the [cohabitation] relationship" (143 Ariz. at 3, 691 P.2d at 715), the agreement may be enforced if it is supported by consideration and if that consideration is not contrary to public policy. A promise to contribute funds to a "pool" of income is proper consideration. *Fernandez v. Garza*, 88 Ariz. at 219, 354 P.2d at 263; *Stevens v. Anderson*, 75 Ariz. at 335–36, 256 P.2d at 714–15; *Garza v. Fernandez*, 74 Ariz. at 316, 248 P.2d at 871. The record here shows that Rose may have agreed to contribute her earnings to a common pool and to hold the property acquired as an equal owner with Donald, and that Donald may have made the same promise. Such mutual promises are adequate consideration to support an enforceable contract. *Palmer v. Kelly*, 52 Ariz. 98, 79 P.2d 344 (1938); 1 A. Corbin, *Contracts* § 142; Restatement (Second) of Contracts § 75.

It may be argued that the courts should follow a policy of not enforcing otherwise valid agreements between those in meretricious relationships because to do so would undermine the public policy which favors marriage over non-marital cohabitation. The argument is that if cohabitants know that the courts will not enforce their agreements, they will be more likely to accept the legal status of marriage. *See, e.g., Hewitt v. Hewitt*, 77 Ill.2d 49, 31 Ill.Dec. 827, 394 N.E.2d 1204 (1979). This view ignores a very real danger.

The unannounced but inherent rule [of the doctrine that the courts will not enforce agreements between cohabitants] is simply that the party who has title, or in some instances who is in possession, will enjoy the rights of ownership of the property concerned. The rule often operates to the great advantage of the cun-

---

1. In his order of March 28, 1983, the trial judge appeared to answer any question on this issue. He found an "implicit" partnership "apart from" the meretricious relationship. In his first conclusion he stated that "there existed independently a meretricious relationship."

ning and the shrewd, who wind up with possession of the property, or title to it in their names, at the end of a so-called meretricious relationship. So, although the courts proclaim that they will have nothing to do with such matters, the proclamation in itself establishes ... an effective and binding rule of law which tends to operate purely by accident or perhaps by reason of the cunning, anticipatory designs of just one of the parties. *West v. Knowles,* 50 Wash.2d 311, 315–16, 311 P.2d 689, 692 (1957).

■ The facts here are not far removed from the view expressed in *Knowles.* Though our courts might attempt to do equity by giving Rose the benefit of her pro rata contributions to the joint property, this places upon her the burden of attempting to prove the specific amounts contributed to each asset. Failing that burden, she is left by such a rule in a position where she may lose all interest in specific assets.[2] This evidently is the result of the judgment of the trial court. Why should Rose, not Donald, bear that burden? The only reason, of course, is that Donald refused to give Rose what he allegedly had agreed she should have—half of the jointly owned property acquired with their pooled income. Thus, assuming Donald reneged on the agreement and held possession of the assets, Rose was forced to become the plaintiff and assume the burden of proof of her contributions to obtain, at best, pro rata reimbursement. If Rose had held the assets and refused to honor the agreement, then Donald would have had to assume the burden. The rule of non-enforcement thus favors the strongest, the most unscrupulous, the one better prepared to take advantage or the more cunning of the cohabitants. We do not believe this rule to be equitable or good public policy. We think the better rule is simply that valid agreements made by the parties will be enforced according to the intent of the parties.

■ Nor do we believe that as a matter of policy cases like this can be resolved on

the basis of a failure of consideration. The expectation of marriage was not realized, but this, we think, is not relevant to the decision. Despite their postponement of the wedding day, the parties continued to pool their income and share the proceeds by acquiring property in their joint name. It is evident that the agreement was not intended to terminate if the parties failed to marry within a reasonable time because they continued to perform financially through twelve years of cohabitation. There being no evidence of an express contingency to the financial arrangement, we cannot conclude, as did the court of appeals (143 Ariz. at 3, 691 P.2d at 715), that the financial agreement was intended to be contingent on marriage. Any inference on this question must be drawn, if at all, by the trial judge.

Because of the interest in the so-called "palimony" question, we think it important to emphasize what we do *not* hold in this opinion. In *Marvin v. Marvin, supra,* the California Supreme Court enforced an oral agreement between non-marital cohabiting parties even though the alleged consideration was that the plaintiff " 'would further render her services as a companion, homemaker, housekeeper and cook to ... defendant.' " 135 Cal.Rptr. at 819, 557 P.2d at 110. The court held that although the provision of sexual services would not support such an agreement, the provision of homemaking services would, and that such consideration was severable from the meretricious aspects of the arrangement. We need not reach the issue of whether an agreement would be enforceable in Arizona if supported only by the consideration of what is commonly thought of as performance of cohabitants' marital functions, and we do not decide that issue. The consideration for any agreement to share assets in the case at bench is not plaintiff's promise to be a homemaker or cohabitant but plaintiff's promise, which she performed, to contribute her income to a "pool" and to share

---

**2.** The evidence here indicates that the burden is onerous. Since she expected to get married, Rose did not keep detailed records of her contributions.

in the assets purchased with funds from that pool.

## PROCEDURAL PROBLEMS

 The substantive legal principles applicable to this case are not nearly as complex as the procedural maze with which we are presented. The case appears to have been tried on one theory, appealed on a second, decided in the court of appeals on a third and submitted here for review on a fourth theory. We granted review because we disagreed with the legal conclusions reached by the court of appeals. As a practical matter, however, resolution of Rose's claim is difficult because we cannot determine just what factual conclusions the trial judge reached. When Rose filed the suit, she described it in the caption as an action for "Partnership/Accounting." The key allegation of the complaint is as follows:

V. That the plaintiff and defendant intended to be partners under an *implied agreement* to acquire property for their joint benefit and to share equally in all profits and accumulations. (Emphasis supplied.)

The relief demanded included prayers designed to enforce plaintiff's alleged fifty percent partnership interest in specified property.

Although the parties had not requested findings of fact and conclusions of law, the judge did make such findings and conclusions in his first post-trial order. The key finding reads as follows:

1. Notwithstanding their meretricious relationship and apart from it, the parties had implicitly a partnership to which both contributed labor and funds toward their accumulation of property ....

The trial judge further found as facts that the parties had intended to share certain assets equally but had not had such an intention with regard to other assets. He reached the following conclusion of law:

1. Each party to this implicit partnership is entitled to his or her equal share where that was their intent, or contribution share otherwise, even though there

existed independently a meretricious relationship between the parties. *Fernandez v. Garza*, 88 Ariz. 214, 354 P.2d 260 (1960); *Cross v. Cross*, 94 Ariz. 28, 381 P.2d 573 (1963).

The trial judge proceeded to divide assets in accordance with the intent of the parties and, with some assets—presumably where there was no intent of the parties—in relation to their contribution.

Donald then moved for modification of the judgment under Ariz.R.Civ.P. 59(a)(1), 16 A.R.S., arguing that the evidence showed no agreement apart from the meretricious relationship and that the claim was based solely on the fact that Rose and he had lived together as husband and wife. Arguing that the court had acted contrary to the law in implying a partnership agreement only on evidence that "the couple lived together and commingled their assets," Donald contended that the proper remedy was that the parties recover the value of their relative contributions to the acquisition of the property. Donald argued further that plaintiff had failed to show such contributions but had instead "sought one-half of all property acquired." Claiming that Rose had failed to carry her burden of showing the amount of her contributions and that the question of partnership had been the only issue tried with the consent of the parties, Donald argued that Rose should receive nothing.

The trial court then entered an amended order, stating that it was

persuaded that it was in error and exceeded its authority in awarding the judgment dated March 28, 1983, since that was not the relief sought by plaintiff in the complaint or the trial...

The court stated that it was

satisfied that the plaintiff failed to prove to a preponderance of the evidence that there existed any implied partnership that would justify in law or fact the relief sought....

The court therefore denied all relief.

We cannot tell from this sequence of orders what the court found. It may have

concluded that there was an agreement to pool income and share equally in all or certain assets but that there was no agreement to enter into a partnership and that the court could not imply such a partnership agreement from cohabitation. On the other hand, the trial court may have meant that there was an agreement to pool income and share assets but that the plaintiff had not brought an action to recover on that theory and therefore could not be awarded relief on that theory. Finally, the court may have held that Rose's recovery of a pro rata share of her contributions was precluded because she had not asserted such a theory in the complaint or at trial, or, if asserted, because she had not carried the burden of showing the amount of such contributions. This interpretation of the court's conclusion is problematic, however, because in its earlier order the court had indicated that it had found the amount of Rose's contributions to the credit union account and the residence. It is difficult to ascertain, therefore, why the court later granted Rose no relief at all.

Confronted with these various possibilities as to the trial court's findings and intentions, the court of appeals described the facts as showing "a man and a woman cohabiting with an agreement .... " (143 Ariz. at 3, 691 P.2d at 715.) Noting the procedural problems below and stating that Rose "steadfastly relies on [the partnership] interpretation of the law as the sole basis for ... relief," the court of appeals then affirmed the trial court, concluding that the agreement was not enforceable because the "contingency of their agreement [marriage] never occurred." (Id. at 3, 691 P.2d at 715.) It also affirmed on the grounds that the agreement was not independent "of the cohabitation arrangement." As noted (*ante* at 668), we do not believe that the judgment may be affirmed on these grounds.

We find that remand is the solution to these problems. The proper principles of law are correctly set forth in the trial court's conclusion (minute entry order of March 28, 1983) quoted above. Leaving aside the label of "partnership," two principles are stated in the cases cited by the trial court. First, if there was an agreement between the parties, supported by proper consideration, that agreement may be enforced according to the intention of the parties, even though the parties were engaged in a meretricious relationship while the agreement was being made and performed. *Fernandez v. Garza*, 88 Ariz. at 219, 354 P.2d at 263; *Stevens v. Anderson*, 75 Ariz. at 335–36, 256 P.2d at 714–15; *Garza v. Fernandez*, 74 Ariz. at 316, 248 P.2d at 871. If, on the other hand, there was no agreement but the property was acquired through the contributions of both parties with an intention that both would share in its benefits, equity will allow each a share of the property in proportion to their respective contributions and efforts. *Stevens v. Anderson, supra; Garza v. Fernandez, supra.*

Thus, implying a partnership is both unnecessary and irrelevant unless, of course, Rose's pleadings, pretrial memoranda and trial theories prevent a granting of relief except upon the finding of an implied partnership. We note, however, that the trial court may base a partnership finding on the existence of an agreement to pool assets and share in profits since a partnership is "an association of two or more persons to carry on as co-owners a business for profit." A.R.S. § 29–206. The issue is not whether Rose and Donald agreed to be partners. There is no evidence that they ever made such an agreement. If they are to be called partners, it is because the law applies that label to the agreement they did make. The key question is whether they exchanged promises, and thus agreed, for a proper, independent consideration, to pool their income and divide certain assets in a certain percentage. If they did, the court may enforce that contract, subject to the procedural problems mentioned above.

We therefore vacate the opinion of the court of appeals, vacate the judgment of the trial court and remand the case to the trial court with instructions that it shall apply the legal principles outlined above to

whatever factual situation it concludes has been established by the evidence. If, because of the limitation of issues resulting from plaintiff's complaint and the theories raised at trial, the court is unable to reach any conclusion with regard to whether an agreement existed, then it may indeed find that Rose has failed in her burden of proof on that point.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.