NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARTINA ESCOBEDO, *Plaintiff/Appellant*,

*v.*

PEDRO R. BANDERAS, *Defendant/Appellee*.

No. 1 CA-CV 22-0069
FILED 9-13-2022

Appeal from the Superior Court in Maricopa County
No.  CV2019-006585
CV2021-093199
FC2018-006220
The Honorable James D. Smith, Judge, *Retired*

**AFFIRMED**

COUNSEL

Tiffany & Bosco P.A., Phoenix
By William M. Fischbach, David M. Barlow
*Counsel for Plaintiff/Appellant*

The Law Office of Mark F. Willimann, LLC, Tucson
By Mark F. Willimann
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

**F U R U Y A**, Judge:

**¶1**  Martina Escobedo appeals the superior court's order denying her an interest in Pedro Banderas' property at W. Lewis Avenue in Phoenix ("W. Lewis House"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**  Escobedo and Banderas began their relationship in 1995. Before meeting, Banderas owned the W. Lewis House and Escobedo owned a property located at N. 37th Avenue in Phoenix ("37th Ave. Home"). Banderas moved into the 37th Ave. Home with Escobedo in the first year of the parties' relationship. Escobedo later sold the 37th Ave. Home and used the proceeds as a down payment to purchase a home at N. 53rd Drive ("N. 53rd Home") in Phoenix. Upon purchase, Escobedo titled the N. 53rd Home in both her and Banderas' names, and the parties lived together in that home for most of their relationship.

**¶3**  The parties never married nor had any written agreements to share their property. They did, however, open a joint bank account, into which they both deposited their salaries and used those funds to pay all household expenses. Those expenses included maintaining their respective properties.

**¶4**  Escobedo managed the couple's finances and maintained their home. She also helped Banderas satisfy his child support arrearages relating to children he had from a previous relationship. Escobedo claimed that while they were together, the parties paid over $67,000 for these arrearages. The payments included $7,520.25 in one year to remove a lien the State placed on the N. 53rd Home because of the arrearages. At some point, the parties refinanced the N. 53rd Home to pay the remaining balance on the W. Lewis House.

**¶5**  Banderas never added Escobedo to the title of the W. Lewis House, and she admitted at trial that Banderas never agreed to give her an interest in it. Throughout their relationship, Banderas used the W. Lewis

House as a rental property and deposited the proceeds into the parties' joint bank account. Both parties contributed to repairs after a fire damaged the W. Lewis House, although they dispute the extent to which they each contributed.

¶6 After their relationship ended, the parties filed multiple lawsuits to resolve various disputes caused by the split. This appeal concerns Escobedo's claim for an equitable interest in the W. Lewis House through an implied-in-fact contract. Following a one-day bench trial, the superior court found that Escobedo failed to meet her burden of showing an enforceable, implied agreement with Banderas to grant Escobedo an interest in the W. Lewis House. The court relied on Escobedo's testimony to the effect that Banderas never agreed on any specific date to give Escobedo any ownership interest in the W. Lewis House, as well as Escobedo's absence from the house's title.

¶7 Escobedo timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1) and -2101(A)(1).[1]

## DISCUSSION

### I. Standard of Review.

¶8 The existence of an "implied-in-fact" contract is reviewed as a "question of fact subject to the clearly erroneous standard of review." 42 C.J.S. *Implied Contracts* § 10, citing *Lund v. Lund*, 848 N.W.2d 266, 270 (N.D. 2014); *see also Pyeatte v. Pyeatte*, 135 Ariz. 346, 353 (App. 1982) (observing implied-in-fact contracts are true contracts proved by circumstantial evidence rather than by express written or oral terms); *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366 ¶ 9 (1999) ("The trial judge's factual findings are reviewed on a clearly erroneous standard."). We view the evidence in the light most favorable to sustaining the court's rulings and will affirm findings reasonably supported by the evidence. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283 ¶ 14 (App. 2019).

### II. Implied Agreement.

¶9 Escobedo argues the court erred in finding she failed to meet her burden to show she was entitled to an interest in the W. Lewis House. Unmarried cohabitants may enter an enforceable agreement to "pool resources and share equally" in property. *In re Marriage of Pownall*, 197 Ariz.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

577, 582 ¶ 18 (App. 2000). Absent an explicit agreement to that effect, either written or spoken, parties' conduct may demonstrate an implied agreement to do so. *Cook v. Cook*, 142 Ariz. 573, 576 (1984).

¶10 Here, the court found Escobedo failed to prove the parties entered into an enforceable contract. We discern no error in this finding.

¶11 Title to the W. Lewis House remained exclusively in Banderas' name. Escobedo is correct that courts should not look solely to the names on titles in determining ownership, but this does not preclude courts from considering title at all. *See Cook*, 142 Ariz. at 576; *see also Pownall*, 197 Ariz. at 581–82 ¶¶ 14, 21 (considering lack of joint title as supporting evidence in rejecting wife's claim to "quasi-marital partnership" regarding husband's residence solely in his name and for which he had made down payment with separate funds).

¶12 The court here compared the way the parties owned their other property. The parties took title to the N. 53rd Home in both names, indicating they intended to own that property jointly. But they did not add Escobedo to the W. Lewis House's title, suggesting they did not intend to own it jointly, as they did the N. 53rd Home.

¶13 Neither did the court rely solely on the W. Lewis House's title. Escobedo herself testified that Banderas never agreed on any specific date to give her an interest in the W. Lewis House. She argues this testimony does not necessarily mean there was never an agreement to grant her an ownership interest in the W. Lewis House, and that the court erred in relying upon it for its finding. But Escobedo does not argue this testimony is irrelevant or inadmissible. And to the extent her statement is equivocal, it was within the court's discretion to assign it weight and significance. *See Lehn*, 246 Ariz. at 283 ¶ 14.

¶14 Escobedo suggests that the great weight of the evidence was in her favor. She recites much of her trial testimony, which she claims supports an implied contract to grant her joint ownership of the W. Lewis House. But this argument equates to a request to reweigh the evidence, which we will not do. *In re Estate of Pouser*, 193 Ariz. 574, 579 ¶ 13 (1999) ("In reviewing a trial court's findings of fact, we do not reweigh conflicting evidence or redetermine the preponderance of the evidence, but examine the record only to determine whether substantial evidence exists to support the trial court's action."). Even if we accept that Escobedo presented more evidence at trial in her favor, "[a] finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence

4

exists." *Kocher v. Dep't of Revenue of State of Ariz.*, 206 Ariz. 480, 482 ¶ 9 (App. 2003).

**¶15** Here, after weighing the evidence, the court found Escobedo did not meet her burden of showing the existence of an implied agreement between the parties to share ownership of the W. Lewis House. It based this finding on substantial evidence, including the absence of her name on the title and Escobedo's testimony. We will not disturb the court's finding. *Id.*

## III. Remaining Arguments on Appeal.

**¶16** In his Answering Brief, Banderas argues that Escobedo's claim to the W. Lewis House is barred by the statute of frauds and the applicable statute of limitations. Given our holding as explained above, we need not, and do not, address these arguments. *See Pima Cnty. Hum. Rts. Comm. v. Arizona Dep't of Health Servs.*, 232 Ariz. 177, 182 ¶ 17 n. 5 (App. 2013) (explaining Court of Appeals declines to decide issues not required to dispose of appeal).

## CONCLUSION

**¶17** The court's ruling is supported by substantial evidence in the record and not contrary to controlling law. Accordingly, we affirm.

**¶18** On appeal, both parties request an award of their respective attorney's fees under A.R.S. § 12-341.01. After consideration and in exercise of our discretion, we decline to award attorney's fees to either party. As the prevailing party on appeal, we award Banderas his taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA