[No. F005354. Fifth Dist. Sept. 26, 1985.]

In re WILLIAM T. on Habeas Corpus.

COUNSEL

McPherson, Barnett & Mattice and William H. McPherson for Petitioner.

No appearance for Respondent.

Griffin, Conway & Jones and Kenneth C. Cochrane for Real Party in Interest.

OPINION

HANSON (P. D.), J.—On March 4, 1985, petitioner William T. (father) was found in contempt by the Stanislaus County Superior Court for failure

to comply with visitation orders on three separate occasions. In defense of his failure to comply, the father offered certified copies of orders issued by the Solano County Juvenile Court on December 18, 1984, and January 17, 1985, restricting visits between Nicole and her mother and grandmother and ordering supervision by the Solano County Welfare Department of those visits.

The Stanislaus County court stated:

"Well, we went through the question I think of whether this Court had jurisdiction to proceed in light of the proceedings that were instituted in Solano County back before I spent three or four days of hard trial in this matter and so far as I am aware there has been nothing presented in Solano County that was not previously adjudicated in this County in a proceeding over which this Court had jurisdiction and if there's a conflict in the jurisdiction I'm going to assume that it is Solano County that does not have jurisdiction, not this County that lacks it.

"The mere fact that it's a Juvenile Court makes no difference whatsoever under the circumstances.

"There was—the proceeding in Solano County is strictly an end run play designed to defeat this Court of jurisdiction in a matter in which it was appropriately exercising its jurisdiction and I'm not going to let that be a defense in any kind of contempt proceeding."

The Stanislaus County court ordered the father to spend five days in county jail for each of three contempts, the time to be served consecutively for a period of 15 days, and to serve a previously stayed 96 hours in jail consecutively to the 15 days. The father petitioned this court for a writ of habeas corpus. We issued a stay of execution of sentence and an order to show cause.

The father and mother have been involved in a continuing acrimonious custody battle over their child Nicole since April 1979. Nicole was an infant at the time her mother first sought a dissolution of the marriage. Originally, the mother was awarded custody of the child with visitation rights to the father. In 1983, the mother was incarcerated for misdemeanor welfare fraud, and the father was given temporary custody of Nicole; the maternal grandmother (grandmother) was given visitation rights. Upon the mother's release from incarceration, she sought custody of Nicole. A hearing was held in July 1983 on allegations that the mother physically abused the child. The court ordered joint custody to the parents and physical custody to the

father. Legal contests between the parties continued, including allegations by the father that the mother sexually abused the child.

In April 1984, the grandmother entered the fray by seeking visitation rights. On August 8, 1984, the court, inundated by various motions by all parties, continued the matters and set a hearing date on October 17, 1984, to resolve all issues.

On August 12, 1984, the father called Richard Tracy of the child protective services in Solano County, where the father and child had resided for approximately a year and one-half. Nicole had just returned from a weekend visit with her mother and said her mother threatened to "beat" her if she did not say her father sexually molested her. The child also related that her mother threatened physical harm if the daughter told anyone about the mother's sexual abuse of the child. Tracy interviewed the father and child, and also reviewed a psychiatrist's report the father had just received, which was prepared for the hearing in the Stanislaus County custody matter. The report was based upon interviews and tests of Nicole, the father and the mother. Several other reports relating to past allegations of sexual and physical abuse were reviewed by Tracy.

On August 23, 1984, Tracy filed a petition with the Solano County Juvenile Court alleging that Nicole came within section 300, subdivision (d), of the Welfare and Institutions Code[1] and urging that Nicole be adjudged a dependent child. Various reports were attached to the petition. Because the grandmother allowed the mother unsupervised access to Nicole, Tracy recommended Nicole be detained in the home of her father and both the grandmother and mother be allowed no contact with her.

On August 24, 1984, the Juvenile Court of Solano County held a detention hearing. Linda Liles, a Solano County welfare worker, was appointed guardian ad litem for Nicole, who was ordered detained at her father's home in his custody; the court ordered that the mother and grandmother have no contact with Nicole. The matter was set for a further hearing on September 13, 1984. On that date, a continuance was granted; at the September 13 hearing, both the mother and grandmother personally were present. Attorney Crozier appeared with the mother. Thereafter, the public defender represented the mother at each hearing. After two continuances, the court held a jurisdictional hearing on December 18, 1984, and after hearing testimony and receiving reports, found the child to be a person described by section 300, subdivision (d). At the hearing, six-year-old Nicole testified she had

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

been taken to a hospital some two years before because she was "itching in [her] crotch a lot"; she testified her mother "stuck her finger up [Nicole's] vagina"; and this happened "all the times [Nicole] took a bath" when she was with her mother. Nicole told her mother she did not like it, but her mother "did not stop." She also testified she was taken to a hospital another time when her mother burned her feet; "she put [Nicole's] feet on the stove."

Dr. David Corwin, a licensed physician and psychiatrist who was board certified in child psychiatry and had been codirector of the family support program at U.C.L.A., a specialized treatment program for sexually abused children and their families, testified that in his opinion Nicole had in fact been sexually molested. Dr. Corwin had been contacted by the grandmother as a neutral expert to participate in the Stanislaus action. The doctor thought Nicole should live with her father, that any visits with her mother should be monitored, and not by the grandmother. The doctor had interviewed Nicole several times, as well as the grandmother, mother and father.

On January 17, 1985, a dispositional hearing was held; the court found that continued custody of Nicole by the mother would be detrimental to the child and adjudged Nicole to be a dependent child of the court. (§ 360.) The court ordered the mother to participate in a counseling program and to have no contact with the child; the father was ordered not to allow Nicole to have contact with the mother; the grandmother was allowed only welfare department *supervised* visits in Solano County; and it was ordered that Nicole be evaluated for therapeutical needs.

While the juvenile court proceedings were pending in Solano County, the court in Stanislaus County, between October 17 and 24, 1984, held a six-day hearing to resolve various factual issues arising from the numerous motions before it. The brief in opposition to the petition for writ includes the minutes of the hearing. The minutes of the first day recite:

"Court finds Solono [*sic*] County does not have jurisdiction over contempt matters or custody in this case.

". . . . . . . . . . . . . . . . . . . . . . . .

"Court informs the parties that if Solono [*sic*] County finds they have jurisdiction, at that time, the orders of this court would be superseded."

After the completion of the hearing in Stanislaus County, the court granted the grandmother's petition for visitation rights. The resulting order allowed the grandmother to visit the child one weekend each month. The

Stanislaus court permitted the mother to visit the child only while with the grandmother, provided the grandmother was present at all times and the mother not spend the night, bathe or dress the child. The mother was allowed to visit the child one day a month, between 10 a.m. and 6 p.m. within a 40-mile radius of the child's home, provided the grandmother or some other responsible adult monitor the visit.

The grandmother sought to pick up Nicole for visits on December 15 and 16, 21 through 23, 1984, and on January 19 and 20, 1985. The father did not bring the child to the assignation point for these three visits. The denial of the grandmother's visitation rights resulted in the March 4, 1985, hearing in Stanislaus County on an order to show cause re: contempt and the incarceration of the father. This petition for writ of habeas corpus followed.

### The Orders of the Juvenile Court Superseded the Orders of the Stanislaus County Court

"When two or more tribunals in this state have concurrent jurisdiction, the tribunal first assuming jurisdiction retains it to the exclusion of all other tribunals in which the action might have been initiated. . . . One reason for the rule is to avoid unseemly conflict between courts that might arise if they were free to make contradictory decisions or awards at the same time or relating to the same controversy; another reason is to protect litigants from the expense and harassment of multiple litigation." (*Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 81-82 [293 P.2d 18].) This general rule applies to conflicts in jurisdiction involving custody questions. (*Greene* v. *Superior Court* (1951) 37 Cal.2d 307, 310-312 [231 P.2d 821].)

However, when the juvenile court, acting under the doctrine of *parens patriae,* acquires jurisdiction and properly assumes custody of the minor, its jurisdiction is paramount even if acquired later in time. "[W]hen a juvenile court has adjudged an infant to be its ward then the orders of that court concerning the physical custody, control and care of its ward supersede for so long as necessary any existing orders of other courts made in custodial matters which conflict therewith and that this situation also makes void custodial orders of other courts thereafter made which interfere with the exercise by the juvenile court of such full control over the minor as is proper in order that it may perform the duties it owes to its ward." (*Marr* v. *Superior Court* (1952) 114 Cal.App.2d 527, 531-532 [250 P.2d 739].) Obviously, the Stanislaus County court recognized this preeminence of a juvenile court order in October 1984, when it informed the parties that if Solano County had jurisdiction, the order of the Stanislaus court "would be superseded." In *Marr,* adoption proceedings were initiated approximately seven months before the petition was filed in juvenile court. The appellate

court held the juvenile court had exclusive jurisdiction insofar as conflicting orders of the adoption court interfered with that jurisdiction. *(Id.,* at p. 532.)

Similarly, in *In re Syson* (1960) 184 Cal.App.2d 111, 117 [7 Cal.Rptr. 298], the court held: "While the juvenile court, on adequate facts, retains jurisdiction and stays within the bounds of its legal power, no other court has the right to interfere with its supervision, for the state, of the children involved." (See also *People* v. *Sanchez* (1942) 21 Cal.2d 466, 471 [132 P.2d 810]; *Dupes* v. *Superior Court* (1917) 176 Cal. 440, 442 [168 P. 888]; *Slevats* v. *Feustal* (1963) 213 Cal.App.2d 113, 117 [28 Cal.Rptr. 517]; *In re Holt* (1953) 121 Cal.App.2d 276, 278 [263 P.2d 50]; *In re Carr* (1944) 65 Cal.App.2d 681, 685 [151 P.2d 164]; *Smith* v. *Smith* (1939) 31 Cal.App.2d 272, 276 [87 P.2d 863].)

The policy behind the exception is clear, and the purpose is understandable. The state, acting through the juvenile court under the theory of *parens patriae,* seeks to protect the child or the community. In dependency proceedings, a private party does not invoke the jurisdiction of the juvenile court. A probation officer or social worker, through the services of child abuse or child protective agencies, determines whether proceedings in the juvenile court are warranted, and the filing of a petition is preceded by an investigation to determine if there is cause to commence such proceedings. (§§ 325-329.) These processes insulate the proceedings from self-interest and petty interferences which can pervade parental custody disputes. The child's welfare is paramount; the child is a party to the action in the juvenile court and must be represented by counsel. (See §§ 317, 318.) In most parental custody proceedings, the child is not ensured representation and must depend upon others to represent the child's "best interests." (See *In re Richard E.* (1978) 21 Cal.3d 349, 353-354 [146 Cal.Rptr. 604, 579 P.2d 495]; *In re Christina L.* (1981) 118 Cal.App.3d 737, 747-748 [173 Cal.Rptr. 722].) The circumstances under which the child may be declared a dependent are specifically embodied in the Welfare and Institutions Code. The Legislature has limited such paramount jurisdiction only to specifically compelling circumstances. (See Gilliam & Gilliam, *The State as Parens Patriae: Juvenile Versus the Divorce Courts on Questions Pertaining to Custody* (1949) 21 Rocky Mt.L.Rev. 375, 383-384; Comment, *Custody of Children in California: Jurisdictional Requirements and Conflicts* (1949) 37 Cal.L.Rev. 455, 475-477.)

We have received nothing from the mother in opposition to this petition for habeas corpus; the only response comes from the grandmother in an opposing brief; she first claims that sections 304 and 304.5 specifically gave the superior court jurisdiction to enter the contempt order. However, section

304 was not operative after October 1, 1984 (Stats. 1981, ch. 104, § 24, pp. 793-794), and was not in effect at the time of the contempt proceedings.

Section 304.5 states: "The fact that a minor is a dependent of the juvenile court pursuant to Section 300 shall not divest a superior court, pursuant to Section 4600 of the Civil Code, from hearing proceedings between two parents regarding the custody of a minor who is within the jurisdiction of the superior court. The records of any juvenile court proceeding involving a minor who is the subject of a proceeding pursuant to Section 4600 of the Civil Code may be introduced in evidence in these proceedings. These records shall be examined in camera by the judge and counsel for both sides and shall remain confidential."

■ Section 304.5 does not provide that the superior court has paramount jurisdiction. The statute merely notes that the superior court retains jurisdiction to *hear* matters related to custody of the minor, even after the juvenile court has taken charge of the minor as a dependent of the court. The special provision allowing use of records from the dependency proceedings operates as an exception to section 355.7 preventing the admission of testimony by a parent having care or custody of the minor who is the subject of a proceeding under section 300, subdivision (d), as evidence in another action. In essence, the statute creates concurrent jurisdiction for the juvenile court in wardship proceedings and the superior court in custody proceedings.

A reason for recognizing concurrent jurisdiction is that hopefully the jurisdiction of the juvenile court is temporary. (*In re Syson, supra,* 184 Cal.App.2d at p. 117.) "Any day that the juvenile court becomes convinced on evidence properly before it that the protection of the children no longer requires wardship, it will be the duty of the juvenile court to dismiss all wardship proceedings. . . . The moment the juvenile court does release wardship, the children pass completely from the mandatory jurisdiction of the juvenile court, and the jurisdiction of other courts, including the superior court in the divorce action, is available." (*Ibid.;* see also *Slevats* v. *Feustal, supra,* 213 Cal.App.2d at pp. 117-118; *Marr* v. *Superior Court, supra,* 114 Cal.App.2d at pp. 531-532.)

■ Section 304.5 allows a court considering custodial matters to hear and determine custodial questions even though the child is a dependent of the juvenile court, but the "juvenile court continues to retain exclusive jurisdiction within the defined limitation of its powers." (*In re Syson,* at p. 117.) The child is thus protected. When and if released from dependency of the juvenile court, it is anticipated that custodial orders will exist which are relevant and which take into account circumstances giving rise to, or

occurring after, the dependency proceedings. (See *Smith* v. *Smith, supra,* 31 Cal.App.2d 272, 277.) Obviously, it is not in the best interests of the child to be bound by antiquated custodial orders at the time of termination of juvenile court jurisdiction.

■ However, concurrent jurisdiction does not make the jurisdiction coequal. The custody court may not seek to enforce custody orders which conflict or interfere with orders properly issued by the juvenile court. (See *In re Christina L., supra,* 118 Cal.App.3d 737, 744-745; *In re Carr, supra,* 65 Cal.App.2d 681, 685.) Such conflicting orders are void and a party may not be held in contempt for disobeying such orders. (*Marr* v. *Superior Court, supra,* 114 Cal.App.2d at pp. 531-532.)

■ Here, the Stanislaus County Superior Court, under section 304.5, had jurisdiction to hold the October hearings and tailor the custody order to its findings. However, on August 24, 1984, after a hearing, the Solano County Juvenile Court had ordered there be no contact between the child and the grandmother. On January 17, 1985, at the Solano County juvenile dispositional hearing, it was ordered that the grandmother be allowed supervised visitation near the child's home but the mother be permitted no contact with Nicole. The Stanislaus County order allowed the grandmother to remove the child to the grandmother's home for two days at a time and allowed supervised contact with the mother. The orders were in conflict. The juvenile court had paramount jurisdiction and the Stanislaus County court could not seek to enforce its conflicting, and void, order.

■ The juvenile court is a court of limited jurisdiction. If a petition fails to allege sufficient circumstances to bring the minor within the purview of the juvenile court, its orders may not affect the preexisting jurisdiction of a divorce court. (*In re Bullock* (1934) 139 Cal.App. 664, 667 [34 P.2d 769]; see also *In re Rauch* (1951) 103 Cal.App.2d 690, 696 [230 P.2d 115]; *People* ex rel. *Jones* v. *Savage* (1941) 44 Cal.App.2d 670, 677 [112 P.2d 892].) ■ However, when a petition alleging sufficient facts to place a child within the perimeters of section 300 is filed in the proper juvenile forum and the child is detained, after a hearing, the juvenile court's power to protect that child is unhampered by custodial rulings in a divorce court.

■ The grandmother claims the juvenile court incorrectly took jurisdiction because the child did not come within the provisions of section 300, subdivision (d). She notes the father was the custodial parent and the child resided in his home. No claim was made in the petition that the child suffered abuse at the father's home. Section 300, subdivision (d), provides: "Whose home is an unfit place for him by reason of neglect, cruelty, de-

pravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is.''

The grandmother's argument is nonsense. The mother retained legal custody of the child and had the right to take the child to her home one or two weekends a month. "Home" is not necessarily only the primary residence of the child. The child possessed more than one home. In this case, it was the mother's home which was unfit. (See *In re La Shonda B.* (1979) 95 Cal.App.3d 593, 601 [157 Cal.Rptr. 280].)

In *In re Nicole B.* (1979) 93 Cal.App.3d 874, 881 [155 Cal.Rptr. 916], a child was assaulted by her mother's live-in boyfriend in a neighboring park. The court found it sufficient under section 300, subdivision (d), that the child "suffered physical abuse at the hands of one 'in whose . . . care' she was,'' even though he no longer lived with the mother. Additionally, although not challenged in *In re Cheryl H.* (1984) 153 Cal.App.3d 1098 [200 Cal.Rptr. 789], the court sustained a finding of dependency under section 300, subdivisions (a) and (d), when a child was molested by her natural father on a weekend visit with him. (*Id.,* at p. 1108-1111.) The mother had physical custody. (Compare with *In re Adele L.* (1968) 267 Cal.App.2d 397, 405, fn. 12 [73 Cal.Rptr. 76].) The petition alleged sufficient factual predicates to provide the juvenile court with jurisdiction.

■ The grandmother also argues she did not receive notice of the proceedings in the Solano County Juvenile Court, thus depriving the juvenile court of jurisdiction. (*In re Moilanen* (1951) 104 Cal.App.2d 835, 842 [233 P.2d 91]; see also *In re B.G.* (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244].) This claim was aired neither in the juvenile court in Solano County nor in the Stanislaus County Superior Court, although the grandmother actually attended a hearing in person in the juvenile court and the mother was represented by the public defender at every hearing. The grandmother's showings in opposition to the writ do not establish as a matter of law either a right to receive notice or a failure thereof. The Stanislaus County Superior Court did not depend upon any failure of notice in the Solano County hearings in seeking to enforce the Stanislaus County orders.[2]

Our consideration of the petition for habeas corpus presents an inappropriate forum for a first consideration of claims of lack of notice by the grandmother. Any questions as to the validity of the recitals by the juvenile

---

[2]The Stanislaus County court did not consider or base its claim of superior jurisdiction upon the deficiencies of notice in the juvenile court proceedings. At the hearing in the contempt proceedings, the grandmother's counsel objected to any questioning of the grandmother regarding notice of the Solano County proceedings as irrelevant. The trial court sustained the objections.

court establishing personal jurisdiction and due notice raised by the grandmother's showing indicate the presence of *actual knowledge* of the pertinent proceedings and waiver by the grandmother and mother.[3] These matters were not litigated below and the record created for this petition is insufficient to sustain a belated collateral attack upon the jurisdiction of the juvenile court. (See *In re Linda D.* (1970) 3 Cal.App.3d 567, 571 [83 Cal.Rptr. 544]; *Slevats* v. *Feustal, supra,* 213 Cal.App.2d 113, 120-121; *People* ex rel. *Pollack* v. *Bogart* (1943) 58 Cal.App.2d 831, 835-836 [138 P.2d 360].)

■ The grandmother's contention that the father should be estopped to deny jurisdiction of the Stanislaus County court because of unclean hands is more nonsense. "[S]ubject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel" nor can "unclean hands" confer jurisdiction where it does not exist. (*In re Marriage of Ben-Yehoshua* (1979) 91 Cal.App.3d 259, 263, 268 [154 Cal.Rptr. 80].) The conflict is between the jurisdictional powers of the respective courts, not personal jurisdiction over the parties. The social worker's decision to file the petition, and the juvenile court's decision to act upon the petition, were not dependent upon the wishes of the father. The father's actions in Stanislaus County court could not give force or effect to its orders where they contravened those of the Solano County Juvenile Court. Had he obeyed the Stanislaus County orders, he would have exposed himself to sanctions for disobeying the Solano County court order.

■ The grandmother's claim that the principles of res judicata or collateral estoppel should bind the juvenile court was not raised in the proper forum and we need not consider it for purposes of this petition. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 198, p. 636.) Further, there was not an identity of parties or issues. Nicole was neither a party to, nor represented in, the custody proceeding. (See *Estate of Charters* (1956) 46 Cal.2d 227, 235 [293 P.2d 778]; *Ruddock* v. *Ohls* (1979) 91 Cal.App.3d 271, 278 [154 Cal.Rptr. 87].) The issues in the custody proceedings differed from the decision before the juvenile court in the jurisdictional hearing. (See *Weak* v. *Weak* (1962) 202 Cal.App.2d 632, 634-635 [21 Cal.Rptr. 9]; *In re Croze* (1956) 145 Cal.App.2d 492, 496-497 [302 P.2d 595].) The

---

[3]The petition filed in the juvenile court recites that the "parent(s)/guardian" were notified of the detention hearing by telephone. In opposition, the grandmother asserts her attorney, who was never made her attorney of record in the Solano proceedings, did not receive notice. The grandmother attended the September 13 hearing and does not claim to have challenged the court's jurisdiction, based on lack of notice, at that time. A November letter from the grandmother's attorney to the Solano County public defender shows actual knowledge of the scheduled December hearing. A letter sent to the mother by the Solano County public defender on December 19 tells the mother the juvenile court took jurisdiction and that the mother could seek to reopen the case and present evidence before the dispositional hearing to be held on January 17, 1985.

application of res judicata principles in the area of child custody proceedings is approached with great caution. (See 7 Witkin, *supra,* § 232, subd. (b), p. 670.) Interestingly, although the custodial decrees of the two courts differed, each court's essential findings were identical: the mother abused the child and it was proper that the child be placed with the father; the crucial differences are definitive of the purposes of juvenile court jurisdiction, protection of the child.

■ The first court-ordered visitation for which the father was found in contempt occurred on the weekend of December 15 and 16, 1984. At that time, the "no contact" order issued after the detention hearing in Solano County was in effect. The second visitation was to occur December 21 through 23. At that time, the juvenile court, following the jurisdictional hearing, had found true the petition alleging Nicole was a child who came within section 300, subdivision (d). The final visit was to take place on January 19 and 20, 1985. The juvenile court held the dispositional hearing on January 17 and at that time ordered that Nicole was a dependent child and the "maternal grandmother . . . be allowed supervised visits in Solano County under Welfare Department supervisor."

The filing of the petition in Solano County Juvenile Court did not remove the Stanislaus County Superior Court from its jurisdiction over custody matters (§ 304.5) in the Stanislaus County Superior Court. (See Breitenbach, *Due Process of Law for Juveniles Revisited* (1962) 37 State Bar J. 32, 51.) However, once the detention hearing was held on August 24, 1984, and the juvenile court appointed a guardian for Nicole, detained her in the home of her father and effectively exercised jurisdiction by issuing the "no contact" protective order, the Stanislaus County court was prevented from enforcing any order conflicting or interfering with the jurisdiction of the juvenile court or its lawful orders. The order of Stanislaus County, allowing both the mother and grandmother contact with the child, was superseded by the protective orders of the juvenile court in Solano County. The Stanislaus orders were void and unenforceable in a contempt proceeding. (*Marr* v. *Superior Court, supra,* 114 Cal.App.2d at p. 532.) "One accused of contempt for disobeying an order may purge himself by showing that the order is void or unlawful." (*Ibid.*)

The petition for writ of habeas corpus is granted. In addition to imposing 15 days in county jail for the three contempts, the Stanislaus court also imposed 96 hours, previously stayed, to be served consecutively from an earlier finding of contempt. The earlier contempts occurred before the juvenile court took jurisdiction, and thus contravening orders offer no defense. The matter is remanded to the Stanislaus County Superior Court for reconsideration; we note the father served three or four days of the contempt

incarceration before we stayed the imposition of sentence. The well-being of the child is paramount, we remind the Stanislaus court, and the record supports that this fact is the basis for Nicole's dependency being found in the Solano County Juvenile Court.

The petition for writ of habeas corpus is granted.

Martin, J., concurred.

FRANSON, Acting P. J.—I concur in the issuance of the writ on the narrow ground that the evidence does not support a finding that petitioner *wilfully* disobeyed the orders of the Stanislaus Superior Court. On October 17, 1984, that court explicitly told the parties that if the Solano County Juvenile Court found it had jurisdiction the orders of the Stanislaus court "would be superseded." Since the juvenile court found that it had jurisdiction, there is no basis for the Stanislaus contempt finding insofar as the orders from the two courts conflict.

I disagree, however, with the majority's holding that the Solano County Juvenile Court properly exercised its Welfare and Institutions Code section 300 jurisdiction under the particular facts of this case. To me, the record indicates that petitioner engaged in blatant forum shopping for the sole purpose of avoiding what he anticipated would be adverse rulings by the Stanislaus court on the various custody and visitation motions then pending in that court. Petitioner's complaint to the Solano County Child Protective Services which triggered the juvenile court petition stemmed from claims of threats made by the mother, resurrecting alleged acts of sexual child abuse and burning which had occurred months and years before. These alleged acts had already been thoroughly investigated by the Stanislaus County Child Protective Services, and the results of its investigation (recommendation that no action be taken) had been communicated to the Solano County Child Protective Services. It was not until August of 1984, after petitioner's motion for change of venue based on "convenience of witness and ends of justice" had been denied by the Stanislaus court, that Solano County Child Protective Services chose to take any action. As aptly noted by the Stanislaus court, the Solano County proceeding was "strictly an end run play designed to defeat [the Stanislaus court] of jurisdiction in a matter in which it was appropriately exercising its jurisdiction . . . ."

Welfare and Institutions Code section 304.5 provides in pertinent part: "The fact that a minor is a dependent of the juvenile court pursuant to Section 300 shall not divest a superior court, pursuant to Section 4600 of the Civil Code, from hearing proceedings between two parents regarding the custody of a minor who is within the jurisdiction of the superior court.

. . ." This statute gives concurrent jurisdiction to the juvenile and superior courts when the custody of a minor is in dispute. It also suggests to me the applicability of the traditional rules of comity to the end that where a custody (or visitation) dispute between parents *is pending* in the superior court at the time a dependency petition is filed in the juvenile court, the latter court should defer to the superior court's handling of these matters unless some compelling reason is shown as to why the superior court cannot protect the safety and best interests of the minor. No such showing was made in the present case.

As the majority acknowledges, this custody war has been going on since 1979. The August 1984 dispute over what the mother allegedly said to the child during a weekend visit was but another battle in the war. The Stanislaus court's various orders concerning custody and visitation reflect a continuing sensitivity to the minor's welfare. Petitioner's alleged concern about the safety of the minor following the early August 1984 visit with the mother and grandmother could easily have been presented to the Stanislaus court pursuant to the pending motions with a suspension of further visitation until the court decided the issue. Thus, there was no urgency or other compelling reason for the juvenile court to exercise its jurisdiction. It should not have done so.