Opinion
 

 TIMLIN, J.
 

 Defendant and appellant Robert C. is the father of minors Travis C. and Seth C., dependents of the Riverside County Juvenile Court. The boys were five and three years old, respectively, when the Riverside
 
 *285
 
 County Department of Public Social Services (DPSS) filed a petition seeking the Riverside County Juvenile Court’s protection on their behalf, pursuant to Welfare and Institutions Code, section 300.
 
 [1]
 
 The petition alleged among other things that their father had abused them sexually.
 

 After a jurisdictional hearing the court found both minors came within section 300, subdivisions (b) and (d). Following the dispositional hearing the minors were adjudged dependents of the court, and placed with their mother. Father appeals from such order, contending that the juvenile court (1) lacked jurisdiction to entertain the petition; (2) erred in finding that minors came within section 300, subdivision (b), because it failed to find that minors had suffered or were at serious risk of suffering serious physical harm or illness; (3) abused its discretion by allowing minors’ psychological counselor to testify as an expert on child sexual abuse and accepting her report into evidence; (4) based its finding that the father sexually abused his sons on the disclosures of “fabricating” children; and (5) failed to conduct a proper dispositional hearing. We find such contentions are nonmeritorious and affirm.
 

 I
 

 Facts
 

 A.
 
 Facts and Procedural Background Concerning Juvenile Court Jurisdiction
 

 A dispute about custody of minors began when their parents, who had never married, parted in the spring of 1988. The father took minors from the mother’s home and placed them with their paternal grandmother without the mother’s knowledge. In a child custody action brought by the father, the Family Law Court of San Bernardino County awarded temporary physical custody to the paternal grandmother, with visitation to both parents. In August of 1988, the family law court placed minors in the primary custody of their mother and ordered that the father have weekend overnight visits with minors three times a month. Sometime around Christmas of that year, the children began to suffer from encopresis.
 
 [2]
 
 After they came back from visiting the father, they soiled themselves two or three times a day.
 

 In May of 1989 minors were residing in Riverside County with their mother and Ray W., with whom the mother had begun cohabiting a few
 
 *286
 
 weeks after separating from minors’ father. One evening the mother put the boys in the bathtub together and left the bathroom. After a while she noticed that minors had gotten very quiet, and she sent Ray W. in to find out what they were doing. Ray found Travis with Seth’s penis in his mouth. The mother took the boys to their bedroom and asked what they had been doing. Travis would say nothing, but Seth stated that he had placed Travis’ penis in his mouth, and that he had learned to do that from his father. Seth also told his mother that his father had placed his own penis in Seth’s mouth.
 

 The mother immediately called the local sheriff’s department to report this information. That department stated that it had no jurisdiction over the matter because the acts took place in San Bernardino County; it recommended she contact the DPSS, which she did the next morning, May 2, 1989. About one week later a DPSS social worker interviewed minors and their mother. The social worker recommended to the mother that she request the San Bernardino County Family Law Court to order that the father’s visits with minors be supervised. In a May 12,1989, letter to the mother, the social worker recommended to the mother that she ask the court to place the visitation matter on the calendar and request that DPSS do an investigation. She cautioned the mother not to violate current court orders, explaining that there was as yet no evidence of sexual abuse, because minors had not disclosed to the social worker that they had been molested.
 

 Acting on the advice of the DPSS social worker, the mother filed an order to show cause for modification of visitation in the San Bernardino County Family Law Court on May 16, 1989, requesting supervised visitation. She also followed the social worker’s recommendation that she file a complaint with the San Bernardino County Sheriff’s Department. Sheriff’s deputies interviewed minors, who denied that their father had sexually abused them.
 

 On May 24, 1989, the mother filed an additional order to show cause requesting the same relief, to which was attached a confidential letter to the court from the DPSS social worker who had interviewed minors and their mother. On June 6, 1989, the family law court continued the hearing on the order to show cause to July 10, 1989, to allow an attorney appointed for the minors to interview them. The parties stipulated that the father have no overnight visitation pending the next court date.
 
 [3]
 

 In the meantime minors had been referred to the family maintenance department of DPSS for assistance on a voluntary basis. They began therapy
 
 *287
 
 with Counselor Barbara Crafts on May 26, 1989. The family maintenance social worker requested that a specially constituted medical team examine minors for evidence of sexual abuse (a CAN exam), because minors were soiling their pants almost daily and did not seem to know this was occurring. The social worker was concerned that the father was intimidating minors.
 

 At the hearing on July 10, minors’ counsel stated to the court that, based on brief conversations he had had with all the parties, he could see nothing specific at that time to disqualify minors’ father from seeing them on an overnight basis, and that the mother’s live-in boyfriend might be influencing the children.
 
 [4]
 
 The father’s attorney argued that the best way to deal with the problem before the court was to have parents and children undergo psychological evaluations. The court ordered psychological evaluations for minors and their parents, continued the matter, and granted the father unsupervised overnight visitation pending the next court hearing.
 

 The mother, who was unrepresented at the July 10 hearing, asked the family law court to suspend the father’s unsupervised visitation until after the CAN exam, which was to be held on July 27. She explained that the Riverside County DPSS social worker was requesting, this. The judge observed that if the social worker wanted to do something she could file a complaint in juvenile court and “any orders they make would have priority over anything we do.” He told the mother to go back to the social worker, and that if the social worker felt she had enough evidence, she should file. The mother stated that the social worker had told her that if the father got unsupervised visitation, it might be possible to take the children into custody until the matter was resolved. The judge responded, “They have the authority to do that. If they have the evidence, they should do so.”
 

 Therapist Barbara Crafts notified the family maintenance social worker on July 12, 1989, that she was filing a child abuse report alleging that minors’ father had sexually molested Michael L., minors’ older half-brother, while Michael lived with his mother and minors’ father. On July 6, Michael had revealed to her in a therapy session that minors’ father had repeatedly grabbed his genitals while wrestling with him, and had not stopped even though Michael had asked him not to do it again. The next day, July 13, 1989, the family maintenance social worker received an emergency call from Ms. Crafts at 7 in the evening. On that date, both Seth and Travis, in separate sessions, had revealed to Ms. Crafts during play therapy that they had been molested by their father. According to the therapist’s written report to DPSS,
 
 *288
 
 Seth described a picture he was painting as “Daddy’s peter” going into “my mouth.” He stated, “Daddy peed in my mouth, it tasted yucky, it felt scary,” and explained that he had been too scared to ask Daddy to stop. His body language and the look on his face were consistent with confusion, fear, and embarrassment. Travis stated he had been hurt by Daddy when “Daddy put his mouth on my peter.” He related how he asked Daddy to stop, but “he just did it anyway.”
 

 DPSS took minors into protective custody on July 14, 1989. On July 18, 1989, the agency filed a dependency petition on the boys’ behalf in the Riverside County Juvenile Court. The petition alleged that (1) minors had suffered, or there was serious risk that they would suffer, serious physical harm or illness, partly because, according to allegation I. a., their mother had failed or been unable to protect them from sexual abuse by their father; (2) minors were suffering, or were at serious risk of suffering, severe emotional damage; and (3) according to allegation III. a., minors had been sexually abused by their father. DPSS later filed an amended petition containing identical allegations.
 

 At the detention hearing on July 19-20, 1989, the father moved to dismiss the original petition on the ground that the sexual abuse allegations had been raised and determined in the San Bernardino Family Law Court within the preceding 60 days.
 
 [5]
 
 The juvenile court took judicial notice of the minute order issued by the family law court after the July 10, 1989, hearing, and denied appellant’s motion to dismiss.
 

 B.
 
 Facts Regarding Appellant’s Asserted Nonjurisdictional Errors
 

 *
 

 II
 

 Discussion
 

 A.
 
 Juvenile Court’s Jurisdiction
 

 The father contends that the juvenile court lacked jurisdiction over minors’ case because the precise factual and legal issue before the court—
 
 *289
 
 whether minors’ father had sexually abused them—had already been resolved in the family law court of another county. He maintains that the family law court had “primary and continuing jurisdiction” over the boys’ custody, and its jurisdiction “preempted the juvenile court’s exercise of jurisdiction.” He also argues that the mother and a social worker colluded in forum shopping, causing DPSS to file the juvenile court petition, and that this collusion negated the jurisdiction of the juvenile court. As we explain below, we disagree.
 

 1.
 
 Collateral Estoppel
 

 Before discussing the jurisdictional issues, we quickly dispatch the father’s collateral estoppel argument that the family law court had heard evidence and reached a decision on the issue of the father’s having sexually abused minors. The records of the family law court reveal that the mother had filed an order to show cause requesting supervised visitation for the father on the ground that he had sexually abused minors; however, they do not indicate that the court heard any evidence concerning the alleged sexual abuse. At the July 10, 1989, hearing the attorney appointed for minors indicated he had spoken briefly with all parties and felt minors might have been influenced by Ray W., and that he saw no obstacle at that time to unsupervised overnight visitation for the father.
 
 [7]
 
 After determining that the best way to handle the issue before the court was to order psychological examinations of both parents and minors, the court made an interim order providing unsupervised overnight visitation for the father pending the next court hearing. Such an order does not amount to the final order or judgment upon which collateral estoppel must be pled; nor do the unsworn comments made at the July 10 hearing constitute actual litigation of an issue. (See
 
 Todhunter
 
 v.
 
 Smith
 
 (1934) 219 Cal. 690, 695 [28 P.2d 916];
 
 In re Walter P.
 
 (1991) 228 Cal.App.3d 113, 125-126 [278 Cal.Rptr. 602]; 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, §§ 198, 253, pp. 636, 691.) Consequently, collateral estoppel principles did not bar the juvenile court from determining the issue of whether minors’ father had sexually molested them.
 

 2.
 
 “First in Time” Jurisdiction
 

 We next turn to the father’s argument that the family law court had preempted the juvenile court’s jurisdiction because it had taken prior jurisdiction over the matter of the boys’ custody, and thus had primary and
 
 *290
 
 continuing jurisdiction over the dispute about visitation. In 1917, our Supreme Court was presented with just such a question. In
 
 Dupes
 
 v.
 
 Superior Court
 
 (1917) 176 Cal. 440 [168 P. 888], a father had been awarded custody of his two children in a judgment of divorce. The children still resided with their mother, pursuant to court order, pending her appeal of the judgment.
 
 (Ibid.)
 
 The children’s paternal uncle filed a petition with the juvenile court, alleging that the children’s mother was immoral and depraved.
 
 (Id.,
 
 at p. 441.) The mother obtained an alternate writ of prohibition halting the juvenile court’s proceedings while the Supreme Court determined whether the juvenile court had jurisdiction over the matter.
 
 (Ibid.)
 

 The
 
 Dupes
 
 court held that the divorce court’s prior jurisdiction did not defeat the juvenile court’s jurisdiction.
 
 (Dupes
 
 v.
 
 Superior Court, supra,
 
 176 Cal. at pp. 441-442.) First, the court cited the fundamental difference between divorce and juvenile proceedings, explaining that the purpose of the divorce court was to determine whether a marriage should be dissolved, and to provide for the custody of children of the marriage if necessary, while the juvenile court was charged, as
 
 parens patriae,
 
 with the protection of children who were endangered by bad influences or surroundings.
 
 (Id.,
 
 at p. 441.) The Supreme Court concluded that “[t]he mere fact that a litigation is pending between the parents and that an order regarding the custody of the children has been made therein does not take away the power of the state nor prevent the exercise of that power under the Juvenile Court Law.”
 
 (Id.,
 
 at pp. 441-442; accord, e.g.:
 
 Svoboda
 
 v.
 
 Superior Court
 
 (1923) 190 Cal. 727, 731-732 [214 P. 440];
 
 In re Holt
 
 (1953) 121 Cal.App.2d 276, 278 [263 P.2d 50];
 
 In re Farley
 
 (1958) 162 Cal.App.2d 474, 478-479 [328 P.2d 230];
 
 In re Benjamin D.
 
 (1991) 227 Cal.App.3d 1464, 1469 [278 Cal.Rptr. 468].) Our Supreme Court has never overruled
 
 Dupes,
 
 and it stands today in California as the single exception to the general rule that among courts of concurrent jurisdiction, that which takes jurisdiction first in time has exclusive jurisdiction. (See
 
 In re William T.
 
 (1985) 172 Cal.App.3d 790, 797 [218 Cal.Rptr. 420].)
 

 The father argues, however, that
 
 In re Brendan P.
 
 (1986) 184 Cal.App.3d 910 [230 Cal.Rptr. 720], established in turn an exception to the
 
 Dupes/ Svoboda
 
 exception. In
 
 Brendan P.,
 
 the appellate court acknowledged in dicta that “[c]ases are legion which permit assumption of juvenile court jurisdiction over custody issues after there has been a custody ruling in a family law department. . . .”
 
 (Id.,
 
 at p. 917.) The court then stated, without citing any authorities, that “in those cases the precise matters charged in the juvenile court are different than [sic] those resolved by the earlier domestic proceeding.”
 
 (Ibid.,
 
 italics deleted.) The
 
 Brendan P.
 
 court did not have to reach the issue of whether or not the juvenile court could take jurisdiction of a case concerning an identical issue already litigated and determined by a family
 
 *291
 
 law court, because it concluded that the juvenile court lacked jurisdiction on due process grounds, due to its failure to give father sufficient notice of a dependency petition regarding his children and a hearing on the petition.
 
 (Id.,
 
 at pp. 915-916, 920.) Nevertheless, it intimated that in such cases it would hold that the family law court had exclusive jurisdiction as the first to decide the issue.
 
 (Id.,
 
 at pp. 916-920.)
 

 The father maintains that the
 
 Brendan P.
 
 dicta require us to hold that the family law court in this case had exclusive jurisdiction over the issue of whether minors were molested by their father. As we noted above, though the family law court had made a custody order concerning minors, it had not yet held a hearing, much less reached a decision on the mother’s order to show cause which was based on allegations that the father sexually molested the minors. Thus, the exception to the
 
 Dupes/Svoboda
 
 exception suggested in
 
 Brendan P.
 
 would not apply in this case.
 

 Assuming that the family law court’s interim visitation order did invoke the
 
 Brendan P.
 
 dicta, we decline to follow it. First of all,
 
 Brendan P.
 
 relies partly on
 
 Greene
 
 v.
 
 Superior Court
 
 (1951) 37 Cal.2d 307 [231 P.2d 821], for its proposition that there are certain situations in which juvenile court jurisdiction is not paramount, even if taken after that of the family law court.
 
 (In re Brendan P., supra,
 
 184 Cal.App.3d at pp. 917-918.)
 
 Greene
 
 is inapposite, however, because it does not deal with the juvenile court at all. Rather, it holds that a superior court of one county does not have jurisdiction to appoint one of a child’s parents its guardian when the superior court of another county already has continuing jurisdiction over the child’s custody.
 
 (Greene, supra,
 
 at. p. 311.) Because
 
 Greene
 
 neither discusses, distinguishes, nor overrules
 
 Dupes, Svoboda,
 
 and their progeny, we conclude that it does not apply to cases involving the juvenile court’s jurisdiction. (See
 
 In re Anne P.
 
 (1988) 199 Cal.App.3d 183, 196-197 [244 Cal.Rptr. 490].)
 

 A second reason for not following
 
 Brendan P.
 
 is that the
 
 Brendan P.
 
 court, in characterizing issues raised in the two different courts as “identical,” ignores the differences between matters presented in family law courts and in juvenile courts. We noted above that in
 
 Dupes
 
 v.
 
 Superior Court, supra,
 
 176 Cal. at page 441, our Supreme Court explained these differences, emphasizing the juvenile court’s special role as protector of children as
 
 parens patriae.
 
 In response to the argument that the juvenile court would “really be passing upon exactly the same question as the one decided by the division [of the superior court] exercising the functions of a divorce court,” the Supreme Court responded, “We do not see that this circumstance makes the slightest difference in the power and jurisdiction of the ‘Juvenile Court.’ ”
 
 (Id.,
 
 at p. 442.) The court went on to point out that the juvenile court’s interest in the present welfare of the children gave it the authority to
 
 *292
 
 pass on the mother’s fitness to parent, and that “[i]n passing upon the question regarding the fitness or unfitness of the mother, the court will be aided by evidence of her conduct in the past, and it will make no difference if exactly such evidence may have been adduced in some other action
 
 in which the parties and the issues were not the same as in the proceeding inaugurated by the uncle of the minors." (Ibid.,
 
 italics added.)
 

 The
 
 Brendan P.
 
 court purports to distinguish
 
 Dupes
 
 on the grounds that it did not deal with the relitigation of issues and refused to consider the possible contingency of a conflict between the divorce and juvenile courts.
 
 (In re Brendan P., supra,
 
 184 Cal.App.3d at p. 919.) Our reading of
 
 Dupes,
 
 however, is that our Supreme Court was explaining that the “issues” before the family law court and juvenile court can never, in fact, be “identical,” even if some or all of the facts of abuse or neglect adduced in the two proceedings are the same, because of the important differences between the purposes and operations of the two courts, and the state’s overriding concern for the protection of the children. In this we are aided by two recent cases,
 
 In re William T., supra,
 
 172 Cal.App.3d 790, and
 
 In re Benjamin D.
 
 (1991) 227 Cal.App.3d 1464 [278 Cal.Rptr. 468],
 

 The appellate court in
 
 In re William T., supra,
 
 172 Cal.App.3d 790, at page 800, held that the concurrent jurisdiction of the juvenile and family law courts does not allow the family law court to seek to enforce custody orders which conflict or interfere with orders properly issued by the juvenile court. The court further elucidated the differences between family law court and juvenile court issues noted in
 
 Dupes'.
 
 “In dependency proceedings, a private party does not invoke the jurisdiction of the juvenile court. A probation officer or social worker, through the services of child abuse or child protective agencies, determines whether proceedings in the juvenile court are warranted, and the filing of a petition is preceded by an investigation to determine if there is cause to commence such proceedings. (§§ 325-329.) These processes insulate the proceedings from self-interest and petty interferences which can pervade parental custody disputes. The child’s welfare is paramount; the child is a party to the action in the juvenile court and must be represented by counsel. (See §§ 317, 318.) In most parental custody proceedings, the child is not ensured representation and must depend upon others to represent the child’s ‘best interests.’ [Citations.] The circumstances under which the child may be declared a dependent are specifically embodied in the Welfare and Institutions Code. The Legislature has limited such paramount jurisdiction only to specifically compelling circumstances.”
 
 (William T., supra,
 
 at p. 798.)
 

 In re Benjamin D.
 
 (1991) 227 Cal.App.3d 1464 [278 Cal.Rptr. 468], review denied May 2, 1991, is a very recent case in which the Court of
 
 *293
 
 Appeal determined that evidence of past physical abuse could be introduced in a juvenile court proceeding along with evidence of current abuse, though the evidence of past abuse had already been adduced in a postjudgment modification of visitation hearing in a family law court.
 
 (Id,.,
 
 at pp. 1468-1470.) The court pointed out that appellant’s analysis failed to “distinguish between the relitigation of facts and whether a given amount of evidence brings a minor within section 300. . . . Facts which show the threat of future physical injury to a minor are necessarily cumulative. A juvenile court must not shut its eyes to facts pointing to the threat of future injury just because those facts may have been previously aired in a family law forum.”
 
 (Id.,
 
 at p. 1470.)
 

 The
 
 Benjamin D.
 
 court distinguished
 
 Brendan P.,
 
 partly on the ground that in
 
 Brendan P.
 
 the issues in both the family law and juvenile courts were identical.
 
 (In re Benjamin D., supra,
 
 227 Cal.App.3d at p. 1471.) However, the court stated: “[E]ven if
 
 Lawrence S.
 
 and
 
 Brendan P.
 
 were not distinguishable, we would decline to follow them. . . . Both cases fail to take into account the statutory mandate of the juvenile court to assume jurisdiction whenever a minor comes within one of the ‘descriptions’ of . . . section 300. Under section 300 it makes no difference whether there is an ongoing dispute being litigated in the family law courts. Put simply, if the minor is being abused (as defined in subds. (a) through (j) of § 300), then he or she ‘is within the jurisdiction of the juvenile court.’
 
 Lawrence S.
 
 and
 
 Brendan P.,
 
 by contrast, make the ‘jurisdiction’ of the juvenile court depend on the nature of the preceding family law litigation and its relation to the subsequent dependency litigation. In effect, these two cases potentially allow litigation between private parties to frustrate the operation of section 300.”
 
 [8]
 

 (Benjamin D., supra,
 
 at pp. 1471-1472.)
 

 Based on
 
 William T., Benjamin D.,
 
 and our own reading of
 
 Dupes,
 
 we hold that, despite the fact that there was a continued hearing pending in the family law court which involved factual allegations of sexual abuse by minors’ father, the juvenile court had jurisdiction over a petition containing the same factual allegations, in its role as
 
 parens patriae.
 

 
 *294
 
 3.
 
 Collusion
 

 Again relying on
 
 Brendan P.,
 
 the father argues that collusion between the mother and the family maintenance social worker in bringing about the filing of the dependency court petition eight days after the family law court allowed the father unsupervised visitation negated the juvenile court’s jurisdiction. It is true that the
 
 Brendan P.
 
 dicta appears to have been prompted by the appellate court’s conclusion that the mother and the family maintenance social worker had schemed in placing a petition before the juvenile court without previous investigation of the allegations, and in shaping the allegations so that the juvenile court could find jurisdiction pursuant to section 300 based only on the mother’s admissions.
 
 (In re Brendan, supra,
 
 184 Cal.App.3d at pp. 913-916, 919, 920.) Nevertheless, facts evidencing some sort of collusion in bringing a petition do not prevent a juvenile court from taking jurisdiction in a matter in which the solid, credible evidence before the juvenile court supports a finding that a child needs the protection of the court because he or she comes within the provisions of section 300. In
 
 In re William T„ supra,
 
 172 Cal.App.3d at page 802, an appellant contended that the father should be estopped from denying the jurisdiction of the family law court because he had somehow conspired in placing the abuse matter before the juvenile court. The appellate court ruled the contention meritless, explaining: “ ‘[Sjubject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel’ nor can ‘unclean hands’ confer jurisdiction where it does not exist. [Citation.] The conflict is between the jurisdictional powers of the respective courts, not personal jurisdiction over the parties.”
 
 (Ibid.)
 
 Thus, “unclean hands” neither confer exclusive jurisdiction on the family law court in the matter before us, nor take away the juvenile court’s paramount jurisdiction in this matter.
 

 Even if the unclean hands doctrine were applicable to cases such as the one before us, we would not conclude that the juvenile court lacked jurisdiction herein. There was substantial evidence before the juvenile court upon which it reasonably could have concluded that no collusion took place between the mother and the family maintenance social worker. At the time DPSS filed the petition, it had been actively investigating the case for approximately two months. After the July 10, 1989, hearing in the family law court, but before the petition was filed, both minors independently disclosed to their therapist that their father had abused them, causing the therapist to make reports of sexual abuse. During the pendency of the investigation, DPSS cautioned the mother to obey all orders and cooperate with the family law court, and there is no indication that she failed to do so. There is no indication, other than the father’s comments, that the mother or social worker bore any animosity toward the father, or acted through any other motivation than concern for the safety of the children.
 

 
 *295
 
 Based on the above principles, we hold that the juvenile court had jurisdiction to entertain the dependency petition filed in this case.
 

 B.-E
 
 *
 

 Disposition
 

 The order below is affirmed.
 

 Hollenhorst, Acting P. J., and McDaniel, J.,
 
 †
 
 concurred.
 

 [1]
 

 All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
 

 [2]
 

 Encopresis is defined as “involuntary defecation of psychic origin.” (Webster’s New Internat. Dict. (3d ed. 1961) p. 747.)
 

 [3]
 

 This court takes judicial notice pursuant to Evidence Code sections 452, subdivision (d) and 459 of the San Bernardino Family Law Court’s minute order in civil case No. 243755, filed June 6, 1989.
 

 [4]
 

 This court takes judicial notice pursuant to Evidence Code sections 452, subdivision (d) and 459 of the reporter’s transcript of the San Bernardino County Family Law Court’s hearing on July 10, 1989, in civil case No. 243755.
 

 [5]
 

 This court takes judicial notice of the reporter’s transcript of the detention hearing contained in the petition for writ of mandate, case No. E007009, filed in this court on August 4, 1989, pursuant to Evidence Code sections 452, subdivision (d), and 459.
 

 *
 

 See footnote,
 
 ante,
 
 page 492.
 

 [7]
 

 Contrary to father’s counsel’s assertion in appellant’s opening brief, at page 7, the attorney did
 
 not
 
 “testify” as to the truth of the sexual abuse allegations. Nor did the attorney indicate that he had “investigated the matter,” as counsel asserts.
 

 [8]
 

 In
 
 In re Lawrence S*
 
 (Cal.App.), the appellate court applied the
 
 Brendan P.
 
 dicta and analysis of
 
 Greene
 
 to a case in which the identical allegations of sexual molestation which had been litigated in a family law court in one county were later raised in a juvenile court action in another county, holding that the family law court, as the court having taken jurisdiction of the matter first, had exclusive jurisdiction over the matter.
 
 Lawrence S.
 
 has been depublished.
 

 *
 

 See footnote,
 
 ante,
 
 page 492.
 

 †
 

 Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.