8 Cal.App.4th 286 (1992)
10 Cal. Rptr.2d 254
In re DESIREE B. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
PHILIP B., JR., Defendant and Appellant.
Docket No. D015258.
Court of Appeals of California, Fourth District, Division One.
July 21, 1992.
*287 COUNSEL
George L. Schraer for Defendant and Appellant.
Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary M. Bubis, Deputy County Counsel, for Plaintiff and Respondent.
Steven Schorr for Minors.
[Opinion certified for partial publication.[1]]
OPINION
BENKE, J.
In this case we reject dicta in our opinion in In re Brendan P. (1986) 184 Cal. App.3d 910 [230 Cal. Rptr. 720], and hold a juvenile court is not collaterally estopped from the reconsideration of custody issues already decided in family court. In the unpublished portion of the opinion we remand for reconsideration of the dependency order.

FACTS AND BACKGROUND
On March 12, 1991, the San Diego County Department of Social Services (Department) filed a Welfare and Institutions Code[2] section 300, subdivision (d), petition as to Desiree (age five) alleging the child had suffered from *288 chlamydia, that on or about March 2, 1989, she had a thickened and eroded hymenal edge consistent with trauma resulting from digital penetration, and finally that between November 1988 and February 2, 1991, Philip B. had digitally penetrated Desiree's vagina and anus and placed his mouth on her breasts. A sibling petition was filed pursuant to section 300, subdivisions (d) and (j), on March 12, 1991, as to Heather (age two).
Philip B. and Alice F. lived together from July 1984 until April 1988 and are the parents of Desiree and Heather. In March 1987, Alice took Desiree to a hospital in Fountain Valley because of redness in the child's genital area. Alice was told Desiree had labial adhesions, a condition in which the labia had become fused, usually as the result of irritation to the area. Desiree told Alice her father had hurt her. Alice also reported she happened on Philip when he was bathing Desiree, that he was vigorously washing the child's vaginal area and when he noticed Alice he jumped back and acted scared. A sexual abuse examination was done but it appears no action was taken against Philip.
In November 1988, Alice, believing Desiree had been molested by Philip, again took the child to Fountain Valley Hospital. The child was apparently examined but no action was taken against Philip.
Dr. Marilyn Kaufhold, a pediatrician at Children's Hospital in San Diego, examined Desiree on January 5, 1989. The doctor found the child had labial adhesions such that the genital features beneath could not be examined. Based on the history given and the condition of the labia the doctor concluded it was possible the child had been molested. The doctor prescribed a cream that would cause the labia to separate.
The doctor again examined Desiree on March 2, 1989. The labia was no longer fused and the doctor could examine the child's genitalia. The doctor found the inner margin of the hymen was thick in appearance and the usual amount of hymenal tissue was not present. It was the doctor's opinion Desiree had been sexually molested. The usual history given for the condition of Desiree's genitalia was multiple penetrations of the vagina by a finger. It was unlikely the condition had been caused accidentally.
Desiree was examined by a pediatrician, Dr. Bronwen Anders, on March 20, 1991. The child had a marked inflammation of the genital area. Among other possible causes the condition can result from molestation. The doctor found the edges of the hymen to be normal but found two pointed processes on the hymenal tissue that could have resulted from past injuries. The doctor viewed photographs taken by Dr. Kaufhold in 1989 and believed there had *289 been healing of the hymenal damage noted in the earlier examination. Dr. Anders concluded the physical findings of the examination were inconsistent with the claim of continued sexual molestation. The doctor also stated molestation could occur without resulting physical signs.
Dr. Kaufhold reviewed Dr. Anders's examination of Desiree and concluded the physical findings could be consistent with molestation. It was Dr. Kaufhold's opinion based on the 1989 and 1991 examinations that Desiree had been molested.
On March 20, 1991, Desiree was interviewed by a social worker at the Center for Child Protection located at Children's Hospital. A report of this interview was made part of the social study and introduced into evidence. After attempting to avoid the subject, Desiree was asked if she had a "bothering" problem and she responded she did. Desiree stated her father did the bothering with his finger. Desiree denied being bothered by anyone else. When shown anatomically correct dolls and asked to show "where we have fingers" Desiree pointed forcefully on the genital area of the female doll. Desiree stated the bothering had occurred on one recent occasion. When asked whether it hurt, Desiree stated it did. Desiree denied being touched on any other part of her body. Desiree indicated her father told her not to talk about the touching.
On another occasion Desiree stated her father had bothered her for a long time and that she could not remember the first time.
Essentially Philip claimed the reports of molestation were the invention of Alice and were designed to limit his access to the girls. Philip argued the medical findings were ambiguous and did not prove molestation. Leanna Gonzalez, a former neighbor of Alice and Philip, testified that on one occasion Alice stated she would do anything she had to do to have custody of Desiree. Jerry and Debbie Murray, friends of Philip and Alice, testified in January, February and the first part of March 1989 they monitored Philip's visits with Desiree and during those visits Philip was never alone with the child.
Philip presented evidence concerning Alice's claim Desiree had tested positive for chlamydia in 1988. The difficulty with the test result was that within days a second test was done with a negative result. Alice explained that after the positive test Desiree was administered an antibiotic for another condition and it was Alice's belief the use of this medication led to the negative result on the second test.
The trial court amended the petitions by excising from them the allegation concerning chlamydia and the allegations of digital anal penetration and the *290 touching by Philip of Desiree's breast with his mouth. As so amended the trial court found true by clear and convincing evidence the allegations of the petition. Desiree and Heather were made dependent children, were placed with their mother and the parents were ordered to comply with reunification programs.

DISCUSSION

A. Collateral Estoppel

(1) Philip argues since the family court of Orange County determined no molestation of Desiree had occurred, the juvenile court of San Diego County was collaterally estopped from readjudicating that issue and the trial court should have granted his motion to dismiss.

1. Background

At the jurisdictional hearing counsel for Philip filed a motion to dismiss the juvenile dependency matter as barred by the doctrine of res judicata. The basis of the motion was the claim the legal and factual issues to be raised had been resolved in the family court of Orange County.
Attached to the motion was counsel's rambling and argumentative declaration concerning the prior history of the matter. Counsel stated he had represented Philip since April 1989. The declaration argued Alice was moving from court to court attempting to find a forum favorable to her allegation Philip had and continued to molest Desiree.
Counsel asserted the testimony of Dr. Kaufhold concerning Desiree's thickened and eroded hymenal edges and the possibility such condition was the result of molestation was heard by Judge Monarch of the Orange County family court at a hearing on May 15, 1989. Judge Monarch found no evidence Philip had sexually molested Desiree and refused to modify the previously ordered visitation scheme.
The declaration noted the section 300 petition in the present case alleged molestation from November 1988 through February 24, 1991. The declaration argued the inclusion of the 1991 date was to defeat any claim consideration of the issue of continuing molestation was collaterally estopped by the 1989 Orange County proceeding. The declaration claimed that in a hearing held before Judge Monarch on November 30, 1990, the claim of molestation had been raised and rejected. Counsel argued, therefore, the San Diego juvenile court was collaterally estopped from considering the issue of molestation occurring before November 30, 1990.
*291 Attached to the declaration are the minutes for the hearing held in the family court on November 30, 1990. The minutes indicate while Philip was represented by counsel, Alice was not. Neither does it appear Desiree was represented. There is nothing in the minutes noting the issue of molestation was considered or any finding made. The declaration itself merely cryptically states Alice "tried to make the same accusations [i.e., molestation] but failed."
The trial court denied the motion to dismiss, stating the records presented did not establish the same factual issues had been considered in the earlier proceeding.

2. Discussion

Philip's collateral estoppel argument is based on dicta in this court's opinion in In re Brendan P. (1986) 184 Cal. App.3d 910, 916-920 [230 Cal. Rptr. 720] (Brendan P.). That dicta has been criticized. (See In re Travis C. (1991) 233 Cal. App.3d 492, 498-503 [284 Cal. Rptr. 469] (Travis C.); In re Benjamin D. (1991) 227 Cal. App.3d 1464, 1468-1473 [278 Cal. Rptr. 468] (Benjamin D.); Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1992) §§ 7:19-7:21.1b.) For the following reasons, we reject the reasoning of Brendan P. and hold a juvenile court in a dependency proceeding is not estopped from reconsidering issues litigated in a prior family law proceeding.
Brendan P. was a disturbing case. At its core was a bitter child custody dispute replete with kidnappings, evasions of court orders and claims by the mother that the father had sexually molested Brendan's half siblings. Lengthy hearings were held in family court over the years and custody orders made. The day after one such order a section 300 petition was filed, alleging Brendan had no parent actually exercising proper parental control. The allegation was based on the claim that as of the date of the last family law custody order the emotional atmosphere in the home had deteriorated because the mother was forced to allow visitation between Brendan and his father, who the petition claimed had sexually molested Brendan's half siblings. The petition stated the mother was requesting the services of the juvenile court. After a short hearing a dependency order was made based solely on the mother's admissions to the petition. While first placed in a foster home, Brendan was later placed with his mother and father was allowed only limited visitation. (184 Cal. App.3d at pp. 912-914.)
We reversed the order of dependency based on the failure to serve the father with the dependency petition until the day of the hearing. We nonetheless discussed at length the issue of the propriety of the assumption of *292 jurisdiction by the juvenile court "over the precise factual and legal issue just that day resolved in another court." (Id. at p. 916.) We noted, in general, the juvenile court could properly assume jurisdiction over custody issues after a custody ruling by a family law department. We stated, however, such assumption of jurisdiction was based on the existence of events occurring after the earlier hearing and could not be assumed simply to relitigate issues resolved in another forum. (Id. at pp. 916-920.)
Two cases decided after Brendan P. have strongly disagreed with this conclusion. In In re Benjamin D., supra, 227 Cal. App.3d at pages 1471-1472, the court argued Brendan P. failed to consider the statutory mandate requiring the juvenile court to assume jurisdiction when a minor came within one of the descriptions listed in section 300. The court concluded Brendan P. wrongly restricted the jurisdiction of the juvenile court based on the nature of the preceding family law litigation. The court stated: "In effect, [Brendan P.] potentially allow[s] litigation between private parties to frustrate the operation of section 300." (Id. at p. 1472, fn. omitted.)
In In re Travis C., supra, 233 Cal. App.3d at pages 498-503, the court took issue with the premise central to the dicta in Brendan P., i.e., that the juvenile court was merely considering an identical issue already resolved in family court. The court concluded as a matter of definition the issues in a family law court were never identical to those in a juvenile court.
Travis C.'s rejection of Brendan P. was based, in large part on its reading of Dupes v. Superior Court (1917) 176 Cal. 440 [168 P. 888] (Dupes). Dupes held the prior jurisdiction of a divorce court did not defeat juvenile court jurisdiction since the purpose of the divorce court was to decide if a marriage was to be dissolved and to provide for the custody of children, if necessary, while the juvenile court was charged with the protection of children. Travis C. cited this statement by the court in Dupes: "`[T]he mere fact that a litigation is pending between the parents and that an order granting the custody of the children has been made therein does not take away the power of the state nor prevent the exercise of that power under the Juvenile Court Law.' (Id., at pp. 441-442; accord, e.g.: Svoboda v. Superior Court (1923) 190 Cal. 727, 731-732 [214 P. 440]; In re Holt (1953) 121 Cal. App.2d 276, 278 [263 P.2d 50]; In re Farley (1958) 162 Cal. App.2d 474, 478-479 [328 P.2d 230]; In re Benjamin D. (1991) 227 Cal. App.3d 1464, 1469 [278 Cal. Rptr. 468].)" (In re Travis C., supra, 233 Cal. App.3d at p. 500.)
Brendan P. distinguished Dupes on the basis it did not deal directly with the relitigation of issues. On reflection, however, we agree with the following analysis made in Travis C.: "Our reading of Dupes, however, is that our *293 Supreme Court was explaining that the `issues' before the family law court and juvenile court can never, in fact, be `identical,' even if some or all of the facts of abuse or neglect adduced in the two proceedings are the same, because of the important differences between the purposes and operations of the two courts, and the state's overriding concern for the protection of the children." (In re Travis C., supra, 233 Cal. App.3d at p. 502.)
The facts of Brendan P. suggested forum shopping and a collusive attempt to manipulate the justice system. Still, the actions of private parties, who indeed may, in a real sense, not have the welfare of their children as their prime motivation, cannot defeat the obligations of the juvenile court. Indeed, where there is abject acrimony between the parents, the juvenile court, with its inclusion of the state as a litigant and it provisions for the appointment of counsel to represent the minor, is the best forum for consideration of issues concerning custody when the child comes within one of the descriptions contained in section 300. (See In re Travis C., supra, 233 Cal. App.3d at p. 502; In re William T. (1985) 172 Cal. App.3d 790, 798 [218 Cal. Rptr. 420].)
We agree with Benjamin D. and Travis C. and decline to follow the dicta in our opinion in Brendan P. The litigation of custody issues in family court does not estop the juvenile court from reconsidering factually identical issues.

B. Sufficiency of Evidence[*]
.... .... .... .... .... .... .... .
The judgment is reversed and the case is remanded to the superior court for a rehearing on the issue of molestation.
Kremer, P.J., and Froehlich, J., concurred.
NOTES
[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part B.
[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[*] See footnote 1, ante, page 286.