Filed 6/13/23  In re L.B. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re L.B. et al., Persons Coming Under the Juvenile Court Law. | |
| | D081080 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J520668) |
| Plaintiff and Respondent, | |
| v. | |
| K.K., | |
| Defendant and Appellant; | |
| A.B., | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of San Diego County, Browder A. Willis, Judge.  Reversed and remanded for further proceedings.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant, K.K.

Joanne Willis Newton, under appointment by the Court of Appeal, for Defendant and Respondent, A.B.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

K.K. (Mother) appeals from the juvenile court's exit orders allowing A.B. (Father) unsupervised visitation with their children, L.B. and S.B. (collectively, the children). Mother contends the visitation portion of the exit orders were not in the children's best interests and therefore were an abuse of the juvenile court's discretion. The San Diego County Health and Human Services Agency (Agency) joins Mother's arguments and additionally argues the juvenile court did not employ the applicable legal standard. Father contends the juvenile court's orders were not an abuse of discretion, and alternatively argues the appeal has become moot following the filing of a new dependency petition in which the juvenile court reassumed emergency jurisdiction and issued an order restricting Father to supervised visitation.[1]

We conclude the new dependency petitions have not rendered the instant appeal moot, and we exercise our discretion to address the merits of Mother's claims. We further conclude the juvenile court did not employ the applicable legal standard when it issued its exit orders and therefore did not exercise informed discretion. Accordingly, we reverse the visitation portion of the exit orders and remand the matter to the juvenile court.

---

[1] Father initially filed a notice of appeal challenging the termination of the juvenile court's jurisdiction. We ordered the parents' appeals to be considered together, but thereafter Father requested dismissal of his appeal. This court ordered the appeal dismissed as to Father only on December 30, 2022. We subsequently issued an order appointing counsel for Father when notified by the Agency that they would be joining Mother's argument and not defending Father's interests.

2

I.

*Events Leading to Dependency*

In March 2021, the Agency filed juvenile dependency petitions alleging Mother caused a traffic collision while under the influence of alcohol with the children in her vehicle. The petitions further discussed Mother's and Father's (collectively, the parents) history of alcohol abuse, and alleged the parents exposed the children to violent confrontations in the family home.[3] At the detention hearing, the court made prima facie findings that the children fell within the jurisdiction of the juvenile court pursuant to Welfare and Institutions Code[4] section 300, subdivision (b), and detained the children in out-of-home care.

Following the detention hearing, Mother completed a 30-day inpatient treatment program and enrolled in outpatient treatment. She acknowledged her alcohol dependency issues to the Agency, stating, "[m]y drinking is completely unacceptable." Father reported that he did not believe he had

---

[2] Mother's sole contention on appeal relates to the juvenile court's exit order allowing unsupervised visitation between Father and the children. We limit our discussion of the factual and procedural history to those facts relevant to this claim.

[3] The Agency's reports reflect that in February 2021, Mother obtained a permanent domestic violence restraining order (DVRO) against Father requiring his visitation with the children to be supervised. The DVRO was issued after an incident in which Father arrived intoxicated at Mother's home and demanded to see the children. Father then broke down Mother's door and chased a babysitter while the children were in the home.

[4] Undesignated statutory references are to the Welfare and Institutions Code.

alcohol dependency issues and declined to participate in a traditional substance abuse program prior to the jurisdiction and disposition hearing.

At the bifurcated jurisdiction and disposition hearing, the juvenile court made true findings on the petitions and declared the children dependents of the juvenile court. Reunification services were offered to both parents and the parents were permitted to have unsupervised visitation with the children. The parents' case plans required them to engage with services, including a domestic violence program, parenting classes, and substance abuse treatment and testing.

## II.

### *Reunification Period*

Less than two months after the jurisdiction and disposition hearing, the Agency petitioned the juvenile court to modify its visitation order as to Father. Father disclosed to the Agency that he was having a mental health crisis and that he did not believe the children should be around him. Father also sent a series of text messages to the children's caregivers calling them "liars" and "scumbags." Consequently, the Agency asked the juvenile court to require Father's visitation with the children to be supervised, and the court granted the Agency's request.

As to Mother, the Agency reported she completed her parenting classes and domestic violence program, continued in her substance abuse program, and maintained stable employment and housing. The Agency authorized Mother to have a 60-day trial visit with the children, during which she "demonstrated the ability to provide adequate and appropriate care for the children." At the six-month review hearing, the juvenile court found that Mother's progress at alleviating or mitigating the causes leading to

4

dependency had been substantial and ordered the children returned to Mother's custody.

In a subsequent status review report, the Agency opined that "the parents ameliorated the protective issues by way of completing the services outlined in their case plans [and] articulating the impact their actions have had on the children. . . ." The Agency reported that Mother "demonstrate[d] long term sobriety" and "appear[ed] to put the children's needs ahead of her own." The Agency recommended that the juvenile court terminate jurisdiction, keep the children placed in Mother's custody, and order Father to have unsupervised visitation with the children.

However, following the Agency's initial recommendation for unsupervised visitation, Father admitted to alcohol and drug use. He enrolled in a substance abuse treatment program and tested positive for methamphetamine and alcohol upon his intake to the program. Father's counselor expressed concern that his methamphetamine use was compounding his mental health issues.

In addition to his drug and alcohol use, the Agency reported an apparent shift in Father's behavior. Father made inconsistent allegations that Mother was drinking alcohol that the Agency believed to be false. He contacted Mother excessively from an unknown phone number despite an active restraining order and requests for him to stop. Mother alleged that Father called her while driving a vehicle intoxicated and threatened to kill himself.

Father also repeatedly called an Agency social worker and texted the social worker a private and sensitive photograph of Mother. The Agency described Father's demeanor to be "erratic, harassing, aggressive, demeaning, and extremely inappropriate." Father was asked to submit to a

drug test, and the drug testing site described Father's behavior as extremely aggressive and erratic. Father left the testing site without signing the paperwork that would have allowed them to test the sample he provided.

Consequently, the Agency amended its initial visitation recommendation and asked the juvenile court to require Father's visitation with the children to be supervised.

III.

*Termination of Dependency Jurisdiction and Exit Orders*

The juvenile court conducted a final hearing in October 2022. The Agency submitted various reports into evidence documenting Father's recent methamphetamine use and "erratic" behavior. Although the Agency noted Father had progressed in various programs, including individual therapy and parenting classes, the Agency expressed concern that Father's behavior had "erratically shifted" in the months prior to the final hearing. The Agency asked the juvenile court to terminate jurisdiction, award Mother sole legal and physical custody, and order Father's visitation to be supervised. Mother and minors' counsel joined the Agency's request that the juvenile court order Father's visitation to be supervised. Father asked the juvenile court to order joint legal custody and unsupervised visitation.

The juvenile court terminated its jurisdiction and ordered Mother to have sole legal and physical custody of the children, finding that their placement with Mother would not be detrimental to the children's well-being. The court issued exit orders that allowed Father unsupervised visitation with the children and required the exchange of the children between the parents to be supervised. In ordering unsupervised visitation between Father and the children, the juvenile court commented, "I do not find—I know there was a positive test for meth, but that, by law, is insufficient to warrant a

6

supervision order based on the totality of the circumstances, but it's the interaction of the parents that is still a concern, so it will be—exchanges must be supervised."

IV.

*Postappeal Proceedings*

Following the termination of dependency jurisdiction—and during the pendency of this appeal—the Agency filed new juvenile dependency petitions relating to the children.[5] The minute orders from the April 2023 detention hearing reflect that the juvenile court made prima facie findings the children were described by section 300, subdivision (b). The court found that removal of the children from Mother's care was necessary as there were no other reasonable means by which their physical or emotional health may be protected. The children were detained in out-of-home care, and the court restricted the parents to supervised visitation. We have not received further notice regarding whether the children were declared dependents of the juvenile court in the new dependency case.

DISCUSSION

I.

*The Merits of Mother's Claim Should be Addressed*

Father contends that Mother's challenge to the exit orders is moot due to the new dependency petitions in which "the juvenile court will ultimately have to address custody and visitation based on circumstances that have

---

[5] The Agency requests this court take judicial notice of the minute orders from the April 17, 2023, detention hearing in the new dependency case. We grant the Agency's request and take judicial notice of the orders. (Evid. Code, §§ 452, 459; see *In re N.S.* (2016) 245 Cal.App.4th 53, 57 [appellate court will consider subsequent rulings by the juvenile court that may affect "whether the appellate court can or should proceed to the merits"].)

7

transpired since the [termination of jurisdiction]." For the following reasons, we disagree and address the merits of Mother's claims.

As a general principle, courts may not " ' "give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' [Citation.]" (*In re D.P.* (2023) 14 Cal.5th 266, 276.) In the dependency context, mootness is determined by "whether the appellate court can provide any effective relief if it finds reversible error." (*In re N.S.*, *supra*, 245 Cal.App.4th 53; accord *In re E.T.* (2013) 217 Cal.App.4th 426, 436 ["[a]n appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief."].) However, dismissal for mootness in dependency cases is not automatic; it " 'must be decided on a case-by-case basis.' " (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.)

In *D.P.*, our high court recently addressed mootness in the dependency context and reaffirmed the principle that mootness is determined by whether the reviewing court can provide effective relief. (*In re D.P.*, *supra*, 14 Cal.5th at p. 276.) The court held that "[f]or relief to be 'effective,' two requirements must be met. First, the [appellant] must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the [appellant] seeks." (*Ibid.*) Where appellant "has not demonstrated a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings," the appeal is moot. (*Id.* at p. 273.)

However, "[e]ven when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*In re D.P.*, *supra*, 14 Cal.5th at p. 282.) "[T]he availability of such discretion is particularly

8

important in the dependency context" considering the speed at which dependency cases evolve and the " ' "recurrent reviews of the status of parent and child" ' " that may render the proceeding moot. (*Id.* at pp. 283–284.) The *D.P.* court provided a nonexhaustive list of factors reviewing courts may consider when determining whether to exercise their discretion, including whether the challenged order " ' "could have other consequences for [the appellant], beyond jurisdiction." ' " (*Id.* at p. 283.) Ultimately, the reviewing court's discretion should be guided by the goal of providing " 'maximum safety and protection for children' with a 'focus' on the 'preservation of the family as well as the safety, protection, and physical and emotional well-being of the child.' " (*Id.* at p. 286)

Here, when the juvenile court terminated dependency jurisdiction over the children, the court was authorized to issue orders addressing custody and visitation, commonly referred to as "exit orders." (§ 362.4, subd. (a); *In re T.S.* (2020) 52 Cal.App.5th 503, 513.) The exit orders become part of the family law file, or the basis for opening a family law file, and remain in effect "until modified or terminated by a subsequent order of the superior court." (§ 362.4, subds. (b)-(c); Cal. Rules of Court, rule 5.700(a).) Because the exit orders in this case necessarily became part of the family law file, or the basis for opening a family law file, the effect of the juvenile court's orders was not strictly limited to the dependency case. (See *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548 [modification of an exit order "may be sought either in a pending family law action or, if none is pending, a new action based solely on the orders."].)

Accordingly, the exit orders at issue in this case are ongoing in the family law context, and Mother's challenge to the orders did not necessarily become moot upon the reassumption of emergency dependency jurisdiction by

the juvenile court.  Although any new visitation orders related to the April 2023 dependency petitions will supersede the exit orders at issue in this case, the new dependency case and related orders are not before us.  (See *In re William T.* (1985) 172 Cal.App.3d 790, 797 ["when the juvenile court, acting under the doctrine of *parens patriae*, acquires jurisdiction and properly assumes custody of the minor, its jurisdiction is paramount even if acquired later in time."].)  We cannot predict the outcome of the new dependency petitions, including whether any superseding exit orders will be issued and made a part of the family law file, or even whether the children will be declared dependents of the juvenile court at all.

Even assuming that the appeal has technically been rendered moot by the orders issued in the new dependency case, we exercise our discretion to address the merits of Mother's claims with our goal in mind of providing for the "maximum safety and protection for [the] children."  (*In re D.P.*, *supra*, 14 Cal.5th at p. 286.)  The exit orders may ultimately affect the "[children's] placement or [the] subsequent family law proceedings" (*Id.* at p. 285), and we

therefore conclude that such discretion is appropriate under the circumstances of this case.[6]

## II.

### *The Visitation Orders Were an Abuse of Discretion*

When a juvenile court terminates dependency jurisdiction, it has "broad discretion" to fashion custody and visitation orders. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn 4.) The juvenile court's focus and primary consideration in issuing such orders must be the best interests of the child. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712; *In re John W.* (1996) 41 Cal.App.4th 961, 973.) Any presumptions that may apply in family court regarding parental fitness are not applicable in this context; the juvenile court must simply be guided by the "best interest standard" in issuing the appropriate visitation orders. (*In re J.M.* (2023) 89 Cal.App.5th 95, 113; *In re Chantal S.* (1996) 13 Cal.4th 196, 206.)

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] The precise measure is

---

[6] While the issue of standing was not raised by the parties, we recognize that Mother may not raise issues on appeal "that do not affect her own rights." (*In re Frank L.* (2000) 81 Cal.App.4th 700, 703.) In the dependency context, a parent does not have standing to raise issues that solely affect the children's best interests absent a showing that the parent's interests are also affected. (*Ibid.*) Although Mother's appeal relates to an order that she contends adversely affects the children's best interests, her interests—as the parent with sole legal and physical custody—are also affected by the juvenile court's order allowing Father to have unsupervised access to the children. Further, the Agency joins Mother's argument, and the Agency was aggrieved when the juvenile court declined to adopt its recommendation for supervised visitation that the Agency made while standing in loco parentis to the children. (See *In re D.R.* (2010) 185 Cal.App.4th 852, 859 [the Agency had a cognizable legal interest that was injuriously affected when the juvenile court denied the Agency's motion to terminate de facto parent status].)

11

whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32; *In re Maya L.* (2014) 232 Cal.App.4th 81, 102 ["We review a juvenile court's custody orders for abuse of discretion"].) We will not find an abuse of discretion unless we conclude that no reasonable judge would have made the same decision under the circumstances, viewing the evidence most favorably in support of the decision. (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 104 (*Sapp*).) However, "[a] discretionary decision may be reversed if improper criteria were applied or incorrect legal assumptions were made. Alternatively stated, if a trial court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15 (*F.T.*).)

Here, in issuing the visitation component of its exit orders, the juvenile court commented that Father's recent drug use was, by law, "insufficient to warrant a supervision order based on the totality of the circumstances." The juvenile court did not mention the applicable best interest standard, nor did the court proffer how the orders for unsupervised visitation were in the children's best interests. Although we generally presume that the juvenile court understood and applied the law correctly (*In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 653), this presumption was overcome by the juvenile court's erroneous statement that Father's drug use was insufficient justification to order supervised visitation *as a matter of law*. The juvenile court was not without the discretion to order supervised visitation based on evidence of Father's continuing drug use if the court found this was in the children's best interests. (See *In re T.S., supra,* 52 Cal.App.5th at p. 513

12

["When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.' "].)

In support of his argument, Father cites to precedent holding that a parent's drug use, without more, is insufficient to bring a child within the jurisdiction of the dependency court. (See *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003, ["a parent's [drug use] '*without more*," does not bring a minor within jurisdiction of the dependency court."].) By extension he reasons that a parent's drug use is insufficient to justify an exit order requiring supervised visitation. Insofar as Father proposes that a parent's drug use may not justify a restrictive visitation order as a categorical rule, we disagree. The standard governing the establishment of dependency jurisdiction is not equivalent to the standard governing the juvenile court's broad discretion to issue visitation orders. (Compare § 355 [dependency jurisdiction may only be established if the allegations of abuse or neglect are proven by a preponderance] with *In re J.M., supra*, 89 Cal.App.5th at p. 113 [" 'the juvenile court has *broad discretion* to make custody [and visitation] orders when it terminates jurisdiction in a dependency case.' [Citation.]" (Italics added)].) Further, when a dependency proceeding is commenced, the juvenile court's "first priority" is to preserve family relationships where possible (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228), whereas the court's "primary consideration" in issuing exit orders is the best interests of the children (*In re T.S., supra*, 52 Cal.App.5th at p. 513). Father cites to no authority suggesting that the juvenile court may not fashion visitation orders to protect a child from a parent's continuing drug use once dependency has already been established.

Moreover, the evidence in support of the Agency's request for supervised visitation was not limited solely to evidence of Father's drug use. The Agency reported that Father was repeatedly contacting Mother in violation of a court-ordered restraining order and that he made false allegations she was consuming alcohol. Mother alleged that Father contacted her while driving a vehicle intoxicated and threatened to kill himself. Father's counselor believed that his methamphetamine use was compounding his mental health issues and the Agency expressed concern that Father's behavior had "erratically shifted" in the period prior to the final dependency hearing.

Considering this additional evidence, along with Father's recent methamphetamine use, we cannot reasonably conclude that the juvenile court would have reached the same decision regarding unsupervised visitation had it employed the applicable best interest standard and been aware of the breadth of its discretion. (*Sapp*, *supra*, 36 Cal.App.5th at p. 104 [an abuse of discretion may be found where we conclude that "under all the evidence, viewed most favorably in support of the trial court's action, no judge reasonably could have reached the challenged result."].) Accordingly, because the record does not reflect the juvenile court was aware of and applied the governing legal standard, we must reverse. (*F.T.*, *supra*, 194 Cal.App.4th at p. 15 [if the juvenile court's decision "reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law."].)

## DISPOSITION

The visitation portions of the exit orders are reversed and the matter is remanded to the juvenile court for further proceedings in accordance with this opinion. We recognize that any exit orders issued pursuant to this opinion may be superseded by visitation orders in connection with the new dependency case and therefore may have limited effect; we do not express any view on the manner in which any subsequent visitation orders should issue. In all other respects, the exit orders are affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


CASTILLO, J.

15